MISSOURI PACIFIC RAILROAD COMPANY v. HENRY.

Opinion delivered January 31, 1927.

1. RAILROADS—KILLING OF DOG—NEGLIGENCE.—Testimony that a train could not have been stopped within time to avoid killing a dog after he was discovered would not as a matter of law overcome the presumption of negligence where there was proof that his presence was discovered 75 yards in front of the train and that the trainmen failed to blow the whistle or ring the bell.

2. NEW TRIAL—RULING ON FORMER TRIAL.—Though the trial court, in the first trial in an action against a railroad company for killing a dog, held the evidence insufficient to support a judgment for plaintiff, this ruling did not preclude a judgment for plaintiff on a second trial on the same evidence.

Appeal from Phillips Circuit Court; *E. D. Robertson*, Judge; affirmed.

*Thomas B. Pryor* and *Daggett & Daggett*, for appellant.

*A. D. Whitehead*, for appellee.

HUMPHREYS, J. Appellee brought this suit in the circuit court of Phillips County against appellant to recover damages in the sum of $110 for killing his pointer dog, in the operation of a passenger train, through the alleged negligence of appellant's employees in failing to give proper warning of the approach of the train and to stop the train when the peril of the dog was discovered.

Appellant filed an answer, admitting the killing of the dog, but denying the allegations of negligence by its employees, and interposing the defense that the dog came on the track in front of the moving train at such time and place that it was impossible to avoid striking him.

The cause was submitted to the court, sitting as a jury, on April 13, 1924, upon the testimony adduced by the respective parties, resulting in a judgment for $60 against appellant.

On May 1, 1924, appellant filed a motion for a new trial upon the grounds that the verdict and finding of the court were contrary to the law and the evidence, and that the court erred in finding and holding that it was the duty of the engineer to give an alarm that would warn the dog of the approach of the train. The abstract does not reflect that this motion was acted upon. On May 2, 1924, the court made the following order: "Now on this day the judgment in this cause heretofore rendered by the court is set aside on the court's own motion and a new trial ordered."

Four witnesses were introduced on the first trial, two by appellee and two by appellant.

Appellee testified, in substance, that he saw the train when it ran over the dog; that the train was fifty or seventy-five yards from the dog when he first saw it, and the dog was in the middle of the track; that the whistle was not blown or the bell rung; that the train was traveling fifteen or twenty miles an hour. Witness admitted that he stated to the claim agent that it was doubtful whether the train could have been stopped so as to prevent the killing of the dog.

C. E. McCabe testified, in substance, that he saw the train at the time it killed the dog; that the dog was in the middle of the track, about sixty yards from the train, when he first noticed it; that the bell was not rung nor the whistle blown; that the train was running probably twenty miles an hour. Witness admitted that he made a statement to the claim agent of the company to the effect that, if the dog had just got on the track when he first saw it, the train could not have stopped in time to prevent striking the dog.

J. M. Smith testified, in substance, that he was the engineer in charge of the locomotive that killed the dog; that the first time he saw the dog it came out of a ditch

which had been leveed on the left side of the track; that the Johnson grass was so high that it prevented him from seeing the dog until it got in the middle of the track, fifty to seventy-five feet in front of the locomotive; that he was in his proper place, and immediately shut off the steam and applied the brakes; that the train was running thirty miles an hour, down grade, and that it would have taken a minute to shut off the steam and apply the brakes so as to become effective; that he did all that could have been done to stop the train and prevent striking the dog; that the bell was ringing, but that he did not have time to blow the whistle before the dog was struck; that it was impossible to stop the train under 600 or 800 feet.

Charlie Begley testified, in substance, that he was the fireman on the train that killed the dog; that he first saw the dog when the train was in the act of running over him; that he had been putting in a fire, and when he got on the box-seat the dog was twenty or twenty-five feet in front of the engine.

At the conclusion of the testimony the court and the attorney for appellant had the following conversation:

"Court: I will concede the engineer could not have stopped the train before he got to the dog. Now, if there is any other feature you might wish to discuss—

"Mr. Daggett: That is the way I see it: if he couldn't have avoided striking the dog—he had only a second to do it—if the dog was anywhere within 44 feet of that train he had only a second—

"Court: How far did it run in a second?

"Mr. Daggett: Forty-four feet. It would run 2,640 feet in a minute, at 30 miles per hour; that is 44 feet per second—a second is just a space of time that nobody can do anything in.

"Court: The court finds that there should have been some warning given by the engineer of the approach of the train that could have been heard by the dog; after he discovered the peril of the dog, it was his duty to give some warning that could be heard by the animal, and, for

his failure to give this warning, judgment is rendered on that ground.

"Mr. Daggett: We except, of course."

On November 12, 1925, the cause was again submitted for trial to the court, sitting as a jury, on the same testimony introduced upon the former trial, which resulted in a judgment in favor of appellee for $60, from which is this appeal.

At the conclusion of the testimony on the second trial there was no repetition of the conversation which occurred between the court and counsel on the first trial.

Appellant contends for a reversal of the judgment upon two alleged grounds:

First, that the evidence is insufficient to support the verdict;

Second, that the court was without authority to render the verdict and judgment in the second trial upon testimony which he, in effect, declared insufficient on the first trial to support a verdict and judgment.

(1). The evidence is conflicting as to the distance between the train and dog when the dog ran upon the track. The testimony introduced by appellee was to the effect that the intervening distance was from sixty to seventy-five yards, whereas the testimony of the witnesses introduced by appellant was to the effect that the intervening distance was from twenty to sixty feet. If the jury believed the engineer discovered the dog in the middle of the track when seventy-five yards from him, they may reasonably have drawn the inference that he should have rung the bell and blown the whistle in an effort to scare the dog off the track. The killing of the dog raised a presumption that it was negligently done, and it cannot be said that the presumption of negligence was removed by undisputed proof to the effect that the dog was unavoidably killed. There is sufficient evidence in the record to support the verdict and judgment.

(2). The argument of learned counsel that the act of setting aside the verdict and judgment on the first trial and granting a rehearing was tantamount to ruling

that the evidence was insufficient to support the verdict, and that the court was bound on the second trial by the first finding, is not sound, for two reasons; the first being that the court set aside the first verdict and judgment on his own motion, without disclosing his reason for doing so, and the second being that the order setting aside the first verdict and judgment and granting a new trial was an interlocutory order which the court had a right to set aside at any time if he concluded he had made a mistake. Of course it would not do to say that a court must adhere to every ruling or interlocutory order made by him during the first trial of a cause, much less to say that he must adhere to rulings and interlocutory orders on the second trial of a cause which he made on the first trial. Such a rule would prevent a court from correcting errors which he had made, or from changing his mind relative to his acts or declarations occurring in the course of a trial. It will be observed in the instant case that appellee did not treat the order setting aside the first judgment as final and appeal from it. The order remained in the case as an interlocutory order. The facts announced in this case do not bring it within the rule announced in *Twist* v. *Mullinix,* 126 Ark. 427, to the effect that, "if the trial court finds and announces that the verdict of the jury is against the preponderance of the evidence on a material issue of fact, he must set aside such verdict." The rule is applicable only to final rulings and orders relative to verdicts and judgments. The trial court's expressions and acts must be consistent in passing upon the sufficiency of the evidence to sustain a verdict and judgment in making final and appealable orders.

No error appearing, the judgment is affirmed.