SIOUX NATIONAL BANK OF SIOUX CITY, IOWA, Respondent, v. LUNDBERG, Appellant.

(223 N. W. 826.)

(File No. 6290.   Opinion filed March 2, 1929.)

*E. E. Wagner,* of Mitchell, for Appellant.
*Thos. McInerny,* of Elk Point, for Respondent.

CAMPBELL, J.  On or about February 5, 1920, defendant executed and delivered to one Williams two certain promissory notes in the following form:

"Feb. 5th, 1920.  No. 48091
"Due Feb. 5, 1921

"One year after date we jointly and severally as principals, promise to pay to the order of myself, Thirty Seven Hundred and Fifty Dollars, $3,750.00, for value received, payable at the office of ————, with 6 per cent interest per annum from date payable semiannually until paid.  Unpaid interest, from the time it becomes due, to bear interest at the same rate as the principal.

"And we further agree to pay all expense of collection including attorney's fee, if this note is not paid at maturity and consent is hereby given that a Justice of the Peace may have jurisdiction herein to the amount of Three Hundred Dollars.  The makers and endorsers of this note hereby severally waive protest, demand, notice of non-payment, and consent to the renewal and extension of this note without notice to us.

"E. S. Lundberg.

"Alcester, S. D."

"Feb. 5th, 1920.  No. 47566E
"Due Aug. 5, 1920

"Six months after date we jointly and severally, as principals, promise to pay to the order of myself, Twelve Hundred and Fifty Dollars $1,250.00 for value received, payable at the office of ————, with 8 per cent interest per annum from date payable semi-annually until paid.  Unpaid interest, from the time it becomes due, to bear interest at the same rate as the principal.

"And we further agree to pay all expenses of collection, including attorneys' fees, if this note is not paid at maturity, and

consent is hereby given that a Justice of the Peace may have jurisdiction herein to the amount of Three Hundred Dollars. The makers and endorsers of this note hereby severally waive protest, demand, notice of non-payment and consent to the renewal and extension of this note without notice to us.

"[Signed]    E. S. Lundberg.

"Alcester, S. D."

The notes were negotiated to plaintiff before maturity and thereafter and about September 16, 1920, defendant made to plaintiff a partial payment on the $1,250 note and executed as renewal and collateral to the balance thereon his promissory note, payable to plaintiff, dated September 16, 1920, due December 1, 1920, in the sum of $1,000. No further payments were made and plaintiff instituted this action to recover upon the notes. It is undisputed that the notes were procured from defendant by fraud and misrepresentation and without consideration, which facts being made to appear, the real issue between the parties was whether or not the plaintiff acquired such notes as a holder in due course, and the burden in this case was upon the plaintiff to so prove. See Jerke v. Delmont State Bank (No. 5440) on rehearing, 54 S. D. —, 223 N. W. 585.

The case coming on for trial, both parties moved for directed verdict at the close of all the testimony. Thereupon the court discharged the jury, took the matter under advisement, and subsequently made and entered findings of fact and conclusions of law in favor of the plaintiff upon all of the issues, and from a judgment in favor of plaintiff and against the defendant duly entered pursuant to such findings and conclusions, and from an order denying his motion for new trial, defendant has appealed.

Appellant advances three principal contentions upon this appeal, which we will proceed to consider. He maintains, first, that respondent could not be a "due course holder" under the law relating to negotiable instruments because the notes in question executed by appellant and indorsed to respondent are not negotiable in form by reason of the following clause therein contained: "The makers and endorsers of this note hereby severally waive protest, demand, notice of non-payment, and consent to the renewal and extension of this note without notice to us." On this point the decisions under the Negotiable Instruments Law are not

entirely harmonious. The view advanced by appellant is decidedly the minority rule, however, and this court stands committed to the majority rule. Security National Bank v. Gunderson (1927), 52 S. D. 25, 216 N. W. 595. The matter was carefully considered in that case, and we believe the correct result was arrived at, and we therefore affirm that holding to the effect that a clause such as is above quoted does not destroy the negotiability of an otherwise negotiable note under the laws of South Dakota.

Appellant further advances the view, in connection with this point, however, that inasmuch as the note was negotiated to respondent in the state of Iowa, its character, as to being negotiable or nonnegotiable, should be determined pursuant to the Iowa law, and that under the Iowa law such clause renders the note nonnegotiable. That the state of Iowa, at one time at least, adopted the minority rule on this question, is indicated by the cases of Cedar Rapids National Bank v. Weber, 180 Iowa, 966, 164 N. W. 233, L. R. A. 1918A, 432, and Quinn v. Bane, 182 Iowa, 843, 164 N. W. 788. See criticism of these cases in Brannan's Negotiable Instruments Law (4th Ed.) pp. 870, 871. We have not searched the subsequent decisions to determine whether or not the Iowa court has continued to maintain the minority view regarding this question because we do not believe it is material in this case. It is the law of this state that the negotiability of a note is determined in the courts of this state, so far as concerns the maker at least, in accordance with the law of the place of payment. Section 876, Rev. Code 1919; Barry v. Stover (1906) 20 S. D. 459, 107 N. W. 672, 129 Am. St. Rep. 941. As will be observed, the notes in question in this case were "myself" notes, indorsed by the maker, specifying no place for payment, but giving the address of the maker as Alcester, S. D. By virtue of section 1777, Rev. Code 1919 (section 73, N. I. L.), the notes were payable at Alcester, S. D., and their negotiability, at least so far as concerns the maker, is determinable in the courts of this state according to the law of South Dakota.

Appellant's second principal contention is that the court erred in taking from the jury the question of whether or not respondent became a due course holder of the notes in question, and appellant here seeks to invoke the rule that it was error to take the case from the jury and make findings against him because there

was sufficient evidence in the case in his favor upon this issue to have supported the verdict if the jury had found in his favor, and therefore that the question should have been submitted to the jury. This is undoubtedly the general rule by which to test the propriety of the action of a trial judge when he directs a verdict. See Commercial & Savings Bank v. Duitsman (1925) 48 S. D. 534, 205 N. W. 379. In the case at bar, however, both parties moved for a directed verdict at the close of all the testimony. It is the settled rule in this state that, "When each party, at the close of all the evidence, presents a motion for direction of a verdict this, in effect, is a submission of questions, both of law and fact, to the court." Share v. Coats (1912) 29 S. D. 603, 137 N. W. 402. See, also, Rice v. Bennett (1912) 29 S. D. 341, 137 N. W. 359; Langbehn v. American Insurance Co. (1919) 41 S. D. 581, 171 N. W. 820.

When both parties, without specific reservation of the right to go to a jury, move for directed verdict at the close of all the testimony, the trial judge may choose between four possible courses: First, he may deny both motions and submit the case to the jury; second, he may deny the motion of the plaintiff and direct the jury to return a verdict in favor of the defendant; third, he may direct the jury to return a verdict in favor of the plaintiff and deny the motion of the defendant; fourth, he may dismiss the jury, make findings and conclusions as in any court case, and render judgment thereon. In any one of the three latter cases the decision of the questions of fact will be considered as the decision of the court. The parties will be deemed to have consented that the court should decide the questions of fact, as well as the questions of law, and the decision is the decision of the court, regardless of whether the judge adopts the fourth choice and makes explicit findings, or whether he adopts the second or third choice and implicitly determines the facts by directing the jury to return a verdict. The test of the sufficiency of the evidence to support the determination of the trial judge upon the facts is the same if any of the three latter choices be adopted and regardless of whether the determination of facts by the trial judge is explicit in the form of findings or is implicit in the direction of a verdict. The determination of the trial judge as to the facts will be sustained in any of those three situations, unless the clear preponderance of the evidence is against the findings explicitly made or against the fact determinations necessarily implicit in his direction of a verdict.

It is also true, however, that in the case of double motions for a directed verdict, either party can avoid this situation of being deemed to have waived the right to go to a jury, and can preserve that right in the event of an adverse ruling upon his motion for directing a verdict by specifically reserving the right in apt language in his motion or by seasonable and proper request after ruling upon the motions and before the rendition of directed verdict. See Share v. Coats, supra. If either party thus makes it clear before rendition of directed verdict or dismissal of the jury that, so far as he is concerned, the double motions do not amount to a waiver of the right to go to a jury, if such right exists, and the court, nevertheless, directs a verdict for the other party, or discharges the jury and makes findings in favor of the other party, the propriety of such action will be tested by the same rule that is applicable where there is but one motion for directed verdict and such motion is granted.

In the case at bar when the testimony was closed respondent moved for directed verdict. Thereupon appellant moved for directed verdict, and in said motion made plain that he waived no right to go to the jury, and specifically reserved such right in the event of a denial of his motion by apt words, including in part the following:

"Upon all these questions, and others appearing from the record, the defendant contends that he is entitled to have the case goto the jury for its decision, and I make this preliminary statement, in view of the motion which I am about to make.

"Now, on behalf of the defendant, and with the distinct understanding that in making said motion the defendant does not waive the right to have all questions pertaining to the good faith of the bank's purchase of this paper, submitted to the jury for its decision, and that it is a question for the jury, and a question of fact and not a question of law for the court, and in the event the motion of the defendant, which I am about to make is overruled, the defendant will then insist upon the right to have the question of the good faith, the bona fides, of the purchase of this paper by the bank submitted to the jury—with that distinct reservation and understanding, the defendant at this time moves the court to instruct the jury to return a verdict in favor of the defendant upon the following grounds."

Thereupon the learned trial judge discharged the jury and announced that he would decide the case, to which appellant duly excepted. Thus far, appellant had made plain that he did not waive his right to go to a jury and did not concede that the decision upon the facts was one to be made by the court and had maintained himself in a position where he was entitled to test the action of the trial judge by the rule ordinarily applicable where a single motion for directed verdict is made and granted.

However, the record shows that thereafter the appellant prepared and presented to the trial judge lengthy findings of fact and conclusions of law and requested that they be made by the court. When appellant did this, he himself invoked the decision of the court upon the facts and thereby conceded that the facts were for the court to decide. By so doing, he lost the benefit of his previous reservation of the right to go to the jury and stands in the same position as though he had made no such reservation and the case is in the same situation as though both parties had moved for directed verdict without reservation, thereby waiving a jury, and the court had dismissed the jury and made findings. The only question that appellant can now raise, as to the sufficiency of the evidence, is whether or not there is a clear preponderance of the evidence against the findings of the trial court.

We think it would serve no good purpose to set out the evidence in detail. We have examined it with care and are satisfied that it does in fact support the findings of the trial court and we certainly cannot say that it preponderates against them. Wherefore, it follows that the findings must stand.

■ Appellant's third principal contention arises out of the fact that this case was once before tried in the court below. It appears that the case was tried before Judge Medin and at the conclusion of the evidence Judge Medin directed a verdict in favor of the plaintiff. Judge Medin thereafter granted a new trial, and in the order granting a new trial specified the grounds upon which the same was based. Some two years later the case was tried in the same circuit with Judge Fleeger presiding, and practically the same evidence was introduced, most of it being read from the transcript of the testimony taken at the first trial. Appellant contends that the questions of law decided by Judge Medin in his order granting a new trial became res adjudicata and the law of the case, and were

binding upon Judge Fleeger at the second trial. With this view we are not able to agree. We do not understand that the doctrine of "law of the case" has any application to the situation that arises when a trial court grants a new trial.

"Where a new trial has been granted, 'the cause is in the same condition as if no judgment had been rendered, so that the action is in no sense new, but, identically the original suit. The error is extirpated, and everything else is in statu quo.'" Connor v. Corson (1900) 13 S. D. 550, 83 N. W. 588.

"Counsel for appellant further question the power and propriety of the second judge, after verdict of the jury had been set aside and new trial granted, in setting aside and reversing the former rulings as to the pleadings made by the first judge. It is clear that after the motion for new trial was granted the court had the same power with reference to the pleadings and all other matters connected with the trial of the case as it had before the jury trial was had." Shaw v. Dorris, 290 Ill. 196, 124 N. E. 796.

"When the case is tried anew, the rulings of the court on the former trial are in no sense res adjudicata." Deiermann v. Bemis Bros. Bag Co., 144 Mo. App. 474, 129 S. W. 229.

See, also, Earl v. Reid, 32 Neb. 45, 48 N. W. 894; Elling v. Blake-McFall Co., 85 Or. 91, 166 P. 57; Missouri Pacific Ry. Co. v. Henry, 172 Ark. 778, 290 S. W. 359.

Being of the opinion that there is no reversible error in the record, the judgment and order appealed from are affirmed.

SHERWOOD, P. J., and BURCH, J., concur.

BROWN, J., absent and not sitting.

POLLEY, J. (dissenting). I am not able to agree with the majority of the court in this case. In the first place the notes were procured by fraud and misrepresentation. This fact cast upon the plaintiff the burden of proving that it is a good-faith holder of the notes. Upon this question the evidence is so evenly balanced that a verdict or finding either way could not be said to be against the preponderance of the evidence, and could not be set aside for insufficiency of the evidence. But the fact that there is evidence sufficient to support a verdict or finding either way is sufficient to take the case to the jury and it was reversible error for the court to take the case from the jury.

At the close of the evidence both parties moved for a directed verdict. This authorized, though I do not think it compelled, the trial court to take the case from the jury and make findings and conclusions as in a court case. Defendant, in making his motion for a directed verdict, reserved the right to object to the taking of the case from the jury unless a verdict was directed for him.

After the jury had been discharged defendant submitted, and requested, findings and conclusions in his favor. This request was denied and findings, conclusions, and judgment were entered for plaintiff. On appeal defendant is urging an exception to the dismissal of the jury; but the majority of the court take the position that, by making a request for findings and conclusions, defendant waived his right to object to the action of the trial court in taking the case from the jury. I think the majority opinion is clearly wrong. The case had been taken from the jury and the jury dismissed before defendant submitted his proposed findings and conclusions. The court had jurisdiction of both parties and the subject-matter. The court in no manner altered its course because of the request for findings, nor were the rights of plaintiff in any way prejudiced. The case having been taken from the jury, it became not only the right of defendant's counsel, but his duty to his client, to make every reasonable effort to secure a decision in his favor. He did not know, merely because the case had been taken from the jury, that the court would decide the case against him, and it ought not to be held that, in order to preserve a right he already possessed, he must stand idly by and make no effort until after judgment had been entered against him. No such rule is invoked by the respondent, and, so far as I can find, no other court ever made such a rule, and certainly no party should be held to have lost a substantial right because of such technicality.

The trial court erred to appellant's prejudice in taking the case from the jury, and the judgment ought to be reversed on this ground alone.