Courtney W. ANDERSON, Plaintiff
and Respondent,

v.

TAURUS FINANCIAL CORPORATION,
d/b/a Taurus Leasing Corporation,
Defendant and Appellant.

No. 12167.

Supreme Court of South Dakota.

Argued April 14, 1978.

Decided July 20, 1978.

Rehearing Denied Aug. 15, 1978.

Gale E. Fisher of May, Johnson & Burke, P. C., Sioux Falls, for plaintiff and respondent.

Steven W. Sanford of Braithwaite & Cadwell, Sioux Falls, for defendant and appellant.

YOUNG, Circuit Judge.

The issues presented in this case are: (1) whether California or South Dakota law should apply to an agreement between Taurus Financial Corporation d/b/a Taurus Leasing Corporation (hereinafter Taurus) and Courtney W. Anderson (hereinafter Anderson) and (2) if South Dakota rather than California law should apply, whether the agreement constitutes a valid sale and

leaseback agreement or is actually a loan in disguise to which the South Dakota usury laws must be applied.

### RELEVANT FACTS AND PROCEDURAL HISTORY

Amongst its other financial enterprises, Taurus is involved in buying the examining room personal property of physicians and leasing it back to them. Taurus is a licensed personal property broker under California law, with its principal place of business in California, and advertises its services nationally. In March of 1973, Taurus received an inquiry from Anderson, a physician in Sioux Falls at the time, about the possibility of arranging a sale and leaseback agreement to cover his office equipment and furniture. After receiving Anderson's inquiry, Taurus sent him a sample statement, which demonstrated the potential income tax savings to be gained from entering into a sale and leaseback agreement with Taurus.

Anderson responded by making application to Taurus for a sale and leaseback arrangement. In the course of applying, Anderson supplied Taurus with a copy of his 1972 Federal Income Tax return, a financial statement and an itemized list of his medical equipment and office furniture, to which he attached a value of $16,500.

Taurus accepted the valuation which Anderson had placed on his office equipment and furniture without conducting any independent inquiry. Anderson subsequently signed a bill of sale which conveyed the itemized office equipment and furniture to Taurus. Anderson also signed a lease agreement for the same office equipment and furniture, which leased it from Taurus back to Anderson, and an authorization for the purchase of life insurance, with Mrs. Anderson to be designated as beneficiary. The agreement was signed in California by Taurus' representative after it had been signed in blank in South Dakota by Anderson.

From the purchase price figure of $16,500 Taurus withheld a $1,500 annual premium for the $50,000 life insurance policy and the first and last two monthly lease payments as stipulated by the agreement. The agreement also specified that Anderson would make fifty-seven equal monthly installment payments of $453.75 beginning on December 25, 1973. Anderson notified Taurus by letter dated December 24, 1974, that he would be returning to active duty as a physician with the United States Air Force and would not be able to continue the agreement. On January 4, 1975, Taurus sent Anderson a telegram informing him that the balance remaining to be paid under the agreement was due and owing and that Taurus intended to collect that amount.

Anderson had made nineteen payments of $453.75, which included the advance payments withheld, for a total of $8,621.25, before ceasing payments. All payments were made by Anderson to Taurus in California. Following receipt of the telegram from Taurus, Anderson did make some additional payments under the lease, the last one dated May 25, 1975. Anderson has made no attempt to return the equipment nor has Taurus tried to gain possession thereof. Anderson is in possession of the equipment, which is in storage. The rent remaining unpaid according to the agreement is $18,603.75.

Among the terms of the agreement which are most pertinent to this action is paragraph 2, which provides that title to all the equipment conveyed remains with Taurus, the lessor, and, that upon expiration of the lease, the equipment must be returned to Taurus in the same condition as when it was received by Anderson, reasonable wear and tear excepted. Additionally, the same paragraph provides that Anderson is liable for the monthly rent until the equipment arrives at Taurus' office. Furthermore, paragraph 19 provides that in the event of default by Anderson, the lessor has five options, including the choice to sue and recover for all rents then accrued or thereafter accruing. Although the agreement contains no purchase option, Anderson may renew the lease for an additional five year period for an annual rental equal to twice the amount of the monthly payment under the original agreement.

Anderson began an action against Taurus in circuit court in the Second Judicial Circuit on October 30th, 1975. In his complaint, Anderson alleges that Taurus engages in false, misleading and deceptive advertising practices, contrary to SDCL 54–5–11, and that as a result of said practices Anderson received a loan of money from Taurus which reserved a rate of interest in excess of that allowed by SDCL 54–3–7. Taurus' answer alleges that the agreement between the parties was in all respects a valid sale and leaseback arrangement to which the South Dakota usury laws do not apply. Alternatively, Taurus alleges that it is a personal property broker under California law and, as such, exempt from the statutory interest rate limitations which would otherwise apply. Taurus' counterclaim alleges that Anderson is in default under the lease agreement and demands payment of the $18,603.75 remaining due under the agreement.

Taurus moved for summary judgment on August 5, 1976, and Anderson also moved for summary judgment shortly thereafter. In addition to various exhibits, each party submitted affidavits in support of its position. No answering affidavits were filed or served.

In a decision dated January 13, 1977, the trial court granted both parties' motions for summary judgment but limited Taurus' recovery under its counterclaim to $6,378.75. The trial court found that the arrangement between Anderson and Taurus constituted a loan rather than a valid sale and leaseback. Additionally, the court found that South Dakota law rather than California law applied to the transaction because the majority of the significant contacts relating to the transaction were in South Dakota. Taurus has appealed to this court from the circuit court's ruling.

### CALIFORNIA LAW APPLIES TO THIS TRANSACTION

Any discussion of the law which should be applied to this agreement must begin with a consideration of SDCL 53–1–4. That statute provides:

A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

Therefore, our first task is to determine where this contract was to be performed.

■ This court has held that the negotiability of a promissory note is to be determined according to the law of the state where the note is payable. See *Barry v. Stover,* 20 S.D. 459, 107 N.W. 672 (1906) and *Sioux National Bank of Sioux City, Iowa v. Lundberg,* 54 S.D. 581, 223 N.W. 826 (1929). Consequently, the validity of the agreement between Taurus and Anderson must be measured by the laws of the state where the periodic payments were due, i. e., California. Therefore, California constitutes the place of performance.

■ SDCL 53–1–4 also states that if a place of performance cannot be discerned from the contract, the contract should be interpreted according to the law of the place where it was made. Assuming that a place of performance could not be gleaned from this contract, California law would still be applied. Under South Dakota law, the test of where a contract is made is the situs of the last act necessary, to give the contract validity. *Briggs v. United Services Life Insurance Co.,* 80 S.D. 26, 117 N.W.2d 804 (1962). California is the place where the last act to make the agreement between Taurus and Anderson a valid and binding contract occurred. That act was the signing of the contract by Taurus' representative. While the Eighth Circuit Court of Appeals has been critical of South Dakota's adherence to the last act rule for determining where a contract was made, see *American Service Mutual Insurance Co. v. Bottum,* 8 Cir., 371 F.2d 6, 9 n. 2 (1967), this court declines to change that rule in the absence of legislative action. The trial court erred in using the theory of significant contacts to determine what law should apply to this transaction.

■ Another principle of law bolsters this court's decision to apply California law to this agreement. Where a contract is susceptible of two constructions or to the application of the law of two different states, one which would render the contract usurious and the other which would not, the law of the state upholding the amount of interest reserved is applied. Subject to the restrictions of SDCL 54–6–42, we adopt this rule. See *Green v. Northwestern Trust Co.,* 128 Minn. 30, 150 N.W. 229 (1914); *Mueller v. Ober,* 172 Minn. 349, 215 N.W. 781 (1927); *State v. Rivers,* 206 Minn. 85, 287 N.W. 790 (1939); *Blackford v. Commerical Credit Corp.,* 5 Cir., 263 F.2d 97, 112–113 (1959), *cert. denied,* 361 U.S. 825, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959). This presumption in favor of the validity of a contract is particularly appropriate under these circumstances, where Anderson was not making these arrangements because he was lacking any of the necessities of life but simply because he was seeking some savings on his federal income taxes.

Anderson has also argued that SDCL 53–9–1 and SDCL 53–9–3 preclude any South Dakota court from enforcing this contract because it is contrary to the public policy of the state of South Dakota. In *Grady v. Denbeck,* 198 Neb. 31, 33, 251 N.W.2d 864, 865 (1977), the Nebraska Supreme Court made these observations about a similar public policy argument, citing its previous decision in *Kinney Loan & Finance Co. v. Sumner,* 159 Neb. 57, 61, 65 N.W.2d 240, 245 (1954):

> " 'Usury laws are not so distinctive a part of the public policy of the forum that the courts will, on the ground of public policy, decline to enforce any contract which would be invalid, if tested by them, though valid according to its proper law.' "

Because the parties have agreed, and it is apparent, that this transaction is valid under California law, the second issue, i. e., whether the agreement is a valid sale and leaseback or a disguised loan, need not be reached.

## CONCLUSION

The judgment from which the appeal was taken is hereby vacated. The case is remanded to the circuit court to determine whether or not a life insurance policy was procured by Taurus. If it is found that Taurus did not procure a life insurance policy for Anderson, Anderson must receive $1,500 credit on the amount which he owes Taurus. If Taurus did obtain that policy, then the trial court should not so reduce that amount. Subsequent to a determination concerning the life insurance policy, the trial court is directed to enter a judgment consistent with this opinion.

WOLLMAN, ZASTROW and PORTER, JJ., and McKEEVER, Circuit Judge, concur.

YOUNG, Circuit Judge, sitting for DUNN, C. J., disqualified.

McKEEVER, Circuit Judge, sitting for MORGAN, J., disqualified.