STATE of South Dakota ex rel. Mark V. MEIERHENRY (successor in office to William J. Janklow), Attorney General for the State of South Dakota, and Trudy Peterson, for herself and all others similarly situated, Plaintiffs and Appellants,

v.

SPIEGEL, INC., Defendant and Respondent.

No. 12385.

Supreme Court of South Dakota.

Argued Oct. 13, 1978.

Decided March 29, 1979.

Rehearing Denied May 3, 1979.

Gale E. Fisher of May, Johnson, Doyle, Becker & Fisher, Sioux Falls, Steven L. Zinter, Asst. Atty. Gen., Pierre, on the brief; William J. Janklow, Atty. Gen., Pierre, for plaintiffs and appellants.

Timothy J. Nimick of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and respondent.

DUNN, Justice (on reassignment).

This case involves an action to recover allegedly usurious interest paid under a revolving charge account agreement and to enjoin the violation of South Dakota's usury laws. Plaintiff Attorney General of South Dakota and plaintiff Peterson (plaintiffs) appeal from an order of the trial court granting summary judgment for defendant Spiegel, Inc. (Spiegel). We reverse and remand.

Spiegel is a Delaware corporation with its principal place of business in Oak Brook, Illinois. It has no office, officers, employees or agents, stores, warehouses or property in South Dakota and is not certified to do business in South Dakota. Spiegel is engaged in the business of selling merchandise by mail order and solicits sales in South Dakota by mailing catalogs to South Dakota citizens. These catalogs contain credit application forms for credit accounts and credit agreement forms for ordering merchandise. The credit application forms are signed by South Dakota citizens and sent to Spiegel in Illinois. Once the application forms are accepted by Spiegel, credit is extended to South Dakota citizens who then mail their merchandise orders to Spiegel in Illinois after filling out the credit agreement forms. Spiegel fills the orders and mails the merchandise to citizens in South Dakota. Spiegel does not take or retain a security interest in merchandise sold to South Dakota citizens.

Spiegel's revolving credit agreements provide that the buyer, by signing, promises to pay according to the contract terms set forth in the current catalog and understands that the contract is to be governed by Illinois law. The Spiegel catalog lists the finance charge on its revolving charge account agreements as 1.65% per month which is an annual percentage rate of 19.8%. The maximum rate allowable under Illinois law is 1.8% per month which is an annual allowable rate of 21.6%. Ill.Rev. Stat. 121½ § 528. South Dakota law limits the annual rate of interest on a retail revolving charge account to 12%. SDCL 54–11–6.

On April 28, 1977, plaintiffs initiated this action to recover interest paid by plaintiff Peterson to Spiegel contrary to South Dakota usury laws and to permanently enjoin the violation of South Dakota usury laws. The issue presented by the pleadings before the trial court was whether the South Dakota usury limit of 12% or the Illinois limit of 21.6% applies to Spiegel's revolving charge account agreements with South Dakota citizens. Spiegel moved for summary judgment on the basis that the substantive law of Illinois applied to the controversy between the parties and that the agreements involved were valid under Illinois law. On October 5, 1977, after reviewing the pleadings, affidavits of the parties, and exhibits, the trial court granted the motion for summary judgment and dismissed the plaintiff's complaint.

The issue presented by this action is simply which substantive law—that of Illinois or that of South Dakota—applies to the Spiegel revolving charge account agreements.[1] In the revolving charge account agreements, the parties agreed to be bound by the substantive law of Illinois. As stated above, the rate of interest charged in the revolving credit agreement is lawful if the law of Illinois applies but would be usurious if South Dakota law applies. Generally, parties to a contract may effectively agree to be bound by the law of a particular state, but such governing law agreements are subject to limitation and invalidation by the overriding public policy of the forum state. *Forney Industries, Inc. v. Andre*, 1965, D.C. N.D., 246 F.Supp. 333, 334, quoting 16 Am. Jur.2d, Conflict of Laws, § 46; *Trinidad Industrial Bank v. Romero*, 1970, 81 N.M. 291, 466 P.2d 568, 571–572.

---

1. Plaintiffs urge us to consider *State ex rel. Turner v. First of Omaha Serv.*, 1978, Iowa, 269 N.W.2d 409. Contra, *Marquette Nat. Bank v. First of Omaha Corp.*, 1978, ——— U.S. ———, 99 S.Ct. 540, 58 L.Ed.2d 534. These cases involve interpretations of the National Bank Act interest provision codified in 12 U.S.C.A. § 85. The pervasive nature of the federal law regarding interest rates charged by national banks is clearly distinguishable from the present situation under consideration.

■ This court has discussed at great length the principle that public policy considerations can render contract provisions unenforceable in *Bartron v. Codington County*, 1942, 68 S.D. 309, 2 N.W.2d 337, wherein it was stated that

"[p]ublic policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good." 68 S.D. at 322, 2 N.W.2d at 343.

The legislature has also addressed the public policy principle in statutory form. Any contract which directly or indirectly exempts anyone from violation of the law, whether willful or negligent, is deemed to be against the policy of the law (SDCL 53–9–3) and any contract provision which is contrary to an express statute or to the policy of an express statute is unlawful (SDCL 53–9–1). See *Schurr v. Weaver*, 1952, 74 S.D. 378, 53 N.W.2d 290. Therefore, foreign laws will not be given effect if, by doing so, contract provisions would be enforced which would be contrary to the settled public policy of the domestic forum. *Mechanics & Metals Nat. Bank v. Smith*, 1927, D.C.S.D., 21 F.2d 128; *Mirgon v. Sherk*, 1938, 196 Wash. 690, 84 P.2d 362. The rationale behind the public policy limitation on the enforcement of governing law agreements is that

" 'freedom of contract is not an absolute right or superior to the general welfare of the public. It is subject to reasonable restraint and regulation by the state, under the police power, to protect the safety, health, morals, and general welfare of the people.' " *Siefkes v. Clark Title Co.*, 1974, 88 S.D. 81, 88, 215 N.W.2d 648, 651–652, quoting *State v. Nuss*, 1962, 79 S.D. 522, 114 N.W.2d 633.

The primary sources for declarations of the South Dakota public policy in areas such as the one presently under consideration are the constitution, statutory law and judicial decisions. *Marchlik v. Coronet Insurance Company*, 1968, 40 Ill.2d 327, 239 N.E.2d 799; *17 C.J.S. Contracts* § 211b, p.

1018; *6A Corbin on Contracts* § 1375, p. 15. South Dakota's general usury law is found in the debtor and creditor title of the code at SDCL 54–3–7. In addition to this general provision, the legislature has enacted a separate and distinct chapter regulating the maximum allowable interest rates on revolving charge accounts. Included in that chapter is a provision which reads as follows:

"Notwithstanding any other provisions of law to the contrary, the highest rate of interest which it shall be lawful for any person to take, receive, retain, or contract for in this state pursuant to the provisions of § 54–11–5 on any revolving charge account shall be twelve per cent per annum, and at the same rate for a shorter time, and in the computation of interest, the same may be compounded." SDCL 54–11–6.

This statute is a legislative expression of the public policy of South Dakota. *91 C.J.S. Usury* § 5c, p. 570. There is also a strong judicial expression of this public policy embodied in *Rollinger v. J. C. Penney Company*, 1971, 86 S.D. 154, 192 N.W.2d 699, in which we stated that "the use of revolving charge account agreements which result in charges exceeding maximum legal interest in this state are in violation of our usury statutes and subject to applicable penalties." 86 S.D. at 164, 192 N.W.2d at 705.

■ The Spiegel revolving charge account is nearly identical in form to the one we analyzed in the *Rollinger* case and we deem *Rollinger* to be controlling in the present action. Looking through the form of the transaction to its substance, the monthly "finance charge" in the Spiegel agreement is, in fact, interest as defined in SDCL 54–3–1.[2] In accordance with the forbearance theory analysis in *Rollinger*, we conclude that the exaction of 1.65% per month by Spiegel is usurious as it constitutes (1) a loan or forbearance, either express or implied, of money or its equivalent; (2) an understanding between parties that

---

**2.** SDCL 54–3–1 reads as follows: "Interest is the compensation allowed for the use, or for-

bearance, or detention of money or its equivalent."

the principal is to be repaid absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law which may be inferred from the contract itself. See *State v. J. C. Penney Co.*, 1970, 48 Wis.2d 125, 179 N.W.2d 641; *State ex rel. Turner v. Younker Brothers, Inc.*, 1973, Iowa, 210 N.W.2d 550; *Rathbun v. W. T. Grant Company*, 1974, 300 Minn. 223, 219 N.W.2d 641; Annot. 41 A.L. R.3d 682. See also, *Lloyd v. Gutgsell*, 1963, 175 Neb. 775, 124 N.W.2d 198; *Sloan v. Sears, Roebuck & Co.*, 1957, 228 Ark. 464, 308 S.W.2d 802.

■ The purpose of the usury law embodied in SDCL 54–11–6 is to protect the general welfare of South Dakota citizens by preventing the exaction of excessive rates of interest in revolving charge account agreements. To permit the governing law agreement between the parties to control the determination of whether or not South Dakota substantive law will apply would allow a foreign corporation the privilege of conducting its business in South Dakota upon more favorable conditions than are afforded to South Dakota corporations and would provide an effective means of circumventing legislation designed to protect citizens of South Dakota. This is clearly against the express public policy of this state as embodied in SDCL 54–11–6 and *Rollinger*, supra. Therefore, we hold that the strong public policy in South Dakota regarding maximum interest rates allowable in revolving charge account agreements invalidates the governing law agreement of the parties which allows for a usurious rate of interest to be taken in South Dakota and that the exaction by Spiegel of such interest in excess of the rate prescribed in SDCL 54–11–6 is unlawful.

Spiegel contends that *Anderson v. Taurus Financial Corp.*, 1978, S.D., 268 N.W.2d 486, is applicable to this action. In *Anderson*, we held that the validity of a sale and leaseback agreement of office equipment and furniture entered into by a South Dakota physician and a California corporation would be measured by the laws of California, where the last act for the validity of

the contract occurred and where periodic payments were due. We viewed the contract as a promissory note and applied case authority regarding such installment loans. Our holding was in line with neighboring jurisdictions as to the validity of interest provided in promissory notes and payable outside of the forum state. See, *Exchange Bank & Trust Co. v. Tamerius*, 1978, 200 Neb. 807, 265 N.W.2d 847; *Grady v. Denbeck*, 1977, 198 Neb. 31, 251 N.W.2d 864; *First National Bank of Wibaux v. Dreher*, 1972, N.D., 202 N.W.2d 670. We did not recognize a strong public policy in regard to these types of contracts, although we made our conclusions subject to the restrictions of SDCL 54–6–42. We further viewed the contract in light of the particular circumstances involved where the physician "was not making these arrangements because he was lacking any of the necessities of life but simply because he was seeking some savings on his federal income taxes." 268 N.W.2d at 489. In light of the strong public policy regarding revolving charge account agreements as expressed in SDCL 54–11–6 and the *Rollinger* case, we do not deem the *Anderson* case to be persuasive authority for a holding contrary to our holding above.

■ Spiegel further contends that South Dakota's regulation of interest rates on revolving charge account agreements restricts the transaction of Spiegel's business conducted wholly in interstate commerce and that such restriction is unconstitutional under the commerce clause of Article I, § 8 of the United States Constitution. This same contention was considered and rejected by three United States Courts of Appeal. *Aldens, Inc. v. Ryan*, 1978, 10 Cir., 571 F.2d 1159; *Aldens, Inc. v. LaFollette*, 1977, 7 Cir., 552 F.2d 745, cert. den. 434 U.S. 880, 98 S.Ct. 236, 54 L.Ed.2d 161; *Aldens, Inc. v. Packel*, 1975, 3 Cir., 524 F.2d 38, cert. den. 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187. We reach the same conclusion as did those three courts. The *Aldens* cases point out that although the Congress has acted comprehensively in the field of retail installment credit in the Federal Truth in Lend-

ing Act (15 U.S.C.A. §§ 1601–65), it has expressly deferred to the states on the matter of maximum interest rates in consumer credit transactions. 15 U.S.C.A. § 1610(b). The rule to be applied in light of Spiegel's contention is that "state regulations involving a legitimate local interest are not invalid because they affect interstate commerce unless the burden on such commerce is, on balance, clearly excessive in relation to the local benefits." *Aldens, Inc. v. LaFollette*, supra, citing *Great Atlantic & Pacific Tea Co. v. Cottrell*, 1976, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55, n. 6, and *Pike v. Bruce Church*, 1970, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174. We have discussed the strong public policy regarding the maximum interest allowable on revolving charge account agreements and the rationale of protecting the general welfare of South Dakota citizens by prohibiting the exaction of excessive rates of interest in revolving charge account agreements. In balancing the interests, we must conclude that the South Dakota usury law embodied in SDCL 54–11–6 involves a legitimate local interest which does not place a burden on interstate commerce that is "clearly excessive" when weighed against the local benefits and protections of the law.

On the basis of our discussion and holding above, we conclude that the trial court committed reversible error when it found that Spiegel was entitled to judg-

ment as a matter of law and granted summary judgment for Spiegel. Our holding compels the opposite conclusions, i. e., that plaintiffs are entitled to judgment as a matter of law. Therefore, the summary judgment of the trial court is reversed and the case is remanded to the trial court with instructions to enter summary judgment for plaintiffs,[3] to issue a permanent injunction pursuant to SDCL 21–8 against Spiegel ordering it to cease charging rates on its revolving charge account agreements in excess of the rate prescribed in SDCL 54–11–6, to make a determination pursuant to SDCL 54–11–7 as to the amount of interest which was charged to plaintiff Peterson by Spiegel, and to order Spiegel to pay such amount to Peterson.

The summary judgment of the trial court is reversed and remanded with instructions.

WOLLMAN, C. J., HENDERSON and FOSHEIM, JJ., and BERNDT, Circuit Judge, concur.

BERNDT, Circuit Judge, sitting for MORGAN, J., disqualified.

---

3. Although plaintiffs did not make a motion for summary judgment, we have held that granting relief not specifically requested is proper where the relief so granted is consistent with the case proven at trial. See *Miller v. Scholten*, 1979, S.D., 273 N.W.2d 757, and the South Dakota authority cited therein. In fact, there is a stat-

utory duty to render final judgment granting "relief to which the party in whose favor it is rendered is entitled." SDCL 15–6–54(c). See also, Annot., 48 A.L.R.2d 1188, Summary Judgment Against Movant, § 3. Summary judgment for plaintiffs is such a final judgment.