Calvin DRIER d/b/a Rural Press,
Plaintiff-Appellant and
Cross-Appellee,

v.

GREAT AMERICAN INSURANCE COM-
PANY and GAB Business Services, Inc.,
Defendants-Appellees and Cross-Appel-
lants.

Nos. 15304, 15309.

Supreme Court of South Dakota.

Argued Nov. 17, 1986.

Decided July 1, 1987.

Gale Fisher of Fisher & Hughes, Sioux Falls, for plaintiff-appellant and cross-appellee.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant-appellee and cross-appellant Great American Ins. Co.

Derald W. Wiehl of May, Johnson, Doyle & Becker, Sioux Falls, for defendant-appellee and cross-appellant GAB Business Services, Inc.

HENDERSON, Justice.

## PROCEDURAL HISTORY

Plaintiff-appellant and cross-appellee, Calvin Drier (Drier), owner of Rural Press, sued Great American Insurance Company and General Adjustment Bureau Services (GAB), Defendants-appellees and cross-appellees (Defendants), contending (1) bad faith in the processing of an insurance

claim and (2) a breach of a duty of care regarding disposal of certain finished business forms. The circuit court granted Defendants' motion for summary judgment as to Drier's first contention, but denied summary judgment regarding the duty of care issue. Two separate issues are before this Court.

(1) Drier contends Defendants were not entitled to Summary Judgment on his bad faith cause of action.

(2) Defendants, via Notice of Review, assert the circuit court erred in refusing to grant their Motion for Summary Judgment concerning Drier's breach of a duty of care claim.

We affirm in part and reverse in part.

## FACTS

Calvin Drier is the sole proprietor of Rural Press, a printing business operating near the Tea Interchange in Lincoln County, South Dakota. He has operated Rural Press since 1967 and specializes in supplying forms to the medical community, including hospitals and clinics. Drier also does general printing, usually for local businesses.

Rural Press had an insurance policy which provided for $160,000 coverage on buildings and $450,000 coverage on personal property. The insurance also included a ninety percent coinsurance provision. American Alliance Insurance Company, a subsidiary of Great American Insurance Companies, issued the policy. Drier was not insured for business interruption.

On October 23, 1981, fire caused extensive damage to the Rural Press building and to personal property within it. Shortly after the fire, Great American hired GAB (the other defendant to this action) to adjust the loss. On October 24, 1981, about twenty-four hours after the fire, Drier arranged for a Tea construction firm to clear debris and build a temporary shelter over his equipment to prevent further damage. Jim Raley, a branch claims manager for Great American, and Gary Welch, staff manager in Great American's Cincinnati office, prevented Drier from doing this. Raley and Welch told Drier they first had to adjust the loss. The construction firm was discharged from the site. Drier, now believing that his insurance company would be difficult to work with, contacted Donald Fretland, a public adjuster, to assist him in determining the loss and to negotiate with Defendants over disputes on questions of value and loss under the coverage provided by the policy.

On October 29, 1981, Drier received $50,000 as an advance on the building loss. Sometime after that, Drier states Great American (through Raley) told him he would have to accept $139,000 as total compensation for building loss or take Great American to court. Drier notes he refused this monetary offer and consulted Fretland. Fretland then arranged for Drier to get almost $10,000 more and the final settlement on the building loss became $148,207.04 (of which Drier recovered $147,207.04 due to a $1,000 deductible clause). Drier received $97,207.04 on November 18, 1981, which represented payment on the building less the $50,000 advance.

Regarding personal property damage, GAB retained Haag Engineering Company to value the loss and repair costs. On November 24, 1981, Drier was advanced $50,000 for personal property loss and repairs. Similarly, on February 12, 1982, Drier received an additional advance of $75,000. On March 2, 1982, 130 days after the fire, the personal property loss/repairs was settled for a total of $399,000. On that date, Drier accepted the amount offered by Great American and signed a sworn statement to that effect. Drier stated he believed if he refused the settlement offer, GAB would recompute the loss, which would take substantial time.

Among the personal property damaged by fire was Drier's stock of "raw" paper and "finished" forms. Finished forms constituted completed customer orders in storage in Drier's facility. Finished forms were to be carted away and destroyed as they were severely damaged. Raw stock was to be sorted and sold as salvage. As it turned out, some finished forms were inadvertently hauled away with the raw stock. LeRoy Schmidt, who was contacted by

GAB and who removed the stock under the supervision of GAB employees, then bartered some of the stock to Roland Marquardt. Upon examination of his purchase, Marquardt discovered he had acquired some printed customer forms. Marquardt states he contacted Drier and offered to sell him the finished forms. According to Marquardt, Drier refused to purchase any finished forms, but did agree to buy back some raw stock. Subsequently, Marquardt attempted to sell finished forms directly to Drier's customers. Drier contends Marquardt's sale attempt to Drier's customers occurred prior to Marquardt's contacting him. Some of Drier's customers, contacted by Marquardt, called Drier to complain. Apparently, some finished forms consisted of business checks and medical claim forms which could be falsified. Eventually, Schmidt and Marquardt returned all finished forms to Drier.

On August 23, 1982, Drier commenced suit against GAB and Great American. Two causes of action were advanced.

(1) First Cause of Action—Drier claimed Defendants acted in bad faith in failing to pay the personal property policy limit of $450,000. Bad faith was alleged due to Defendants' delay in processing the claim coupled with their knowledge that Drier had no business interruption insurance and that he would be forced to accept the $399,000 settlement. Drier sought $52,000 to achieve the policy limit of $450,000 and $1,000,000 in punitive damages.

(2) Second Cause of Action—Drier claimed Defendants breached their duty of care to him when they allowed finished forms to wind up in the hands of unauthorized persons thereby causing damage to Drier's business reputation, character, and integrity. Drier sought $300,000 in damages.

Defendants, on May 15, 1985, filed a Joint Motion to Dismiss, and in the Alternative for Summary Judgment. On January 24, 1986, the circuit court granted Defendants' Motion for Summary Judgment as to the first part of Drier's complaint. The court noted "the settlement agreement of March 2, 1982, operated as a complete defense to Drier's first cause of action in that there was no genuine issue of material fact as to whether fraud or duress induced the settlement." Regarding the second part, the circuit court held that Defendants owed a duty to Drier to use reasonable care in ensuring that the finished forms were properly disposed of. Determining a genuine issue of material fact existed as to whether that duty was breached, Defendants' Motion for Summary Judgment on the second cause of action was denied.

Drier appeals from the Order dismissing his first cause of action. Defendants filed Notice of Review concerning the circuit court's refusal to dismiss Drier's second cause of action.

## DECISION

### I.

In its memorandum opinion, the circuit court placed great emphasis on the settlement agreement signed by Drier on March 2, 1982. The court held, absent fraud or duress by Defendants, Drier was bound by the March 1982 settlement agreement. The court failed to find a genuine issue of material fact, namely duress, granted Defendants' Motion for Summary Judgment, and dismissed Drier's first cause of action. We hold that summary judgment was proper under these circumstances.

█ Undoubtedly, a party may waive his right to sue if he accepts a settlement check for a disputed amount with full knowledge that the check is to act as complete payment for the debt. SDCL 20–7–4. *See Hubbard Milling Co. v. Frame*, 310 N.W.2d 155, 156–57 (S.D.1981); *Hamburger v. Economy Dep't Store*, 54 S.D. 65, 67, 222 N.W. 603, 604 (1928). The same general rule applies in the insurance area; an insured's acceptance of a check from his insurance company in settlement of a disputed sum may constitute an accord and satisfaction. *Thomson v. Meridian Life Ins. Co.*, 38 S.D. 570, 584, 162 N.W. 373, 378 (1917). *See* 15A *Couch on Insurance*

2d § 59:66 (rev. ed. 1983); 7C J. Appleman, *Insurance Law and Practice* § 4715, at 566 (Berdal ed. 1979). However, accords and satisfactions are contractual in nature and are voidable if obtained through duress. SDCL 53-4-2. *See Erck v. Bachand,* 69 S.D. 330, 335, 10 N.W.2d 518, 520 (1943). *See also* 17 C.J.S. *Contracts* § 173 (1963).

Drier seeks to avoid the settlement based on Defendants' alleged delay tactics and unfair techniques which Drier claims amounted to duress. Drier pins his hopes for success in this matter on the doctrine of business compulsion/economic duress. This is an issue of first impression in South Dakota.

Business compulsion/economic duress is a relatively recent outgrowth, encouraged by courts of equity, of the old common law doctrine of duress. 17 C.J.S. *Contracts* § 177 (1963). *See* 13 S. Williston, *Williston on Contracts* § 1617 (3d ed. 1970); Restatement (Second) of Contracts § 176, comment a (1981). Originally, common law duress was concerned exclusively with either physical imprisonment or threats of serious bodily harm. Dawson, *Economic Duress—An Essay in Perspective,* 45 Mich.L.Rev. 253, 254 (1947). *See* 17 C.J.S. *Contracts* § 176. Gradually, duress extended into the field of economic pressure, opening new avenues for growth. *See* Dawson, *supra,* at 254-55. Today, "[m]any authorities recognize ... that economic duress or business compulsion vitiates a contract induced thereby." 17 C.J.S. *Contracts* § 177. *See also* 13 S. Williston, *supra,* at § 1617. Business compulsion/economic duress will generally be available where one party to a contract, in economic straits, is called upon to comply with demands made by the other contracting party (who is at least partly to blame for the former's strained condition and who is often in a position of superior bargaining power) and the former party is put into a position of either acquiescing to the latter's demands (which are in and of themselves unfair or wrongful) or suffering a serious business loss if accession is withheld. *See Totem Marine Tug & Barge v. Alyeska Pipeline,* 584 P.2d 15, 21-23 (Alaska 1978); 13 S. Williston, *supra,* at § 1617; Dawson, *supra,* at 253; Restatement (Second) of Contracts § 176, comment a; 17 C.J.S. *Contracts* § 177.

It is not jurisprudentially ripe that we now approve or disapprove of the business compulsion/economic duress doctrine. Simply stated, the facts in this case are not sufficient to warrant application of the doctrine. Instead, the uncontroverted facts, as detailed in the settled record, reflect:

(1) Drier received three advancements from the Defendants ($50,000 for building loss on October 29, 1981 and $50,000 and $75,000 for personal property loss on November 29, 1981 and February 12, 1982 respectively);

(2) Drier's own adjuster (Fretland) stated he was not aware of any Defendant dishonesty in connection with Drier's claim and 130 days between the fire to final settlement did not constitute undue delay and was not unusual;[1] and

(3) Defendants were not responsible for the fire or for Drier's failure to carry business interruption insurance and therefore did not induce a state of mind in Drier that would constitute duress.

■ Viewing all the evidence most favorably from the standpoint of the nonmoving party, we agree with the circuit court that no genuine issue of material fact exists. *See Wilson v. Great N. Ry.,* 83 S.D. 207, 157 N.W.2d 19 (1968). Summary judgment was properly granted to Defendants.[2]

---

1. *See Champion v. United States Fidelity & Guar. Co.,* 399 N.W.2d 320 (S.D.1987) (where this Court, in a unanimous decision, "allow[ed] a cause of action against an insurance company for bad faith failure to pay a claim."). *Id.,* at 322.

2. Drier also argues that the circuit court's failure to consider two of his three depositions requires reversal. We disagree. First, the settled record indicates only one of three Drier depositions was unopened by the circuit court. Second, a circuit court's failure to consider a deposition does not automatically warrant reversal. *See Miller Grading Contractors, Inc. v.*

## II.

Drier also asserted, in his amended complaint, that Defendants' negligence caused his finished forms to fall into a salvager's possession. Salvager then offered to sell the forms to Drier's customers, who complained to Drier. Drier contends his business reputation was damaged. Defendants assert the existence of any duty owed to Drier is irrelevant. They claim negligence cannot form the basis for damage to business reputation. The circuit court found Defendants owed Drier a duty to use reasonable care in the disposal of the finished forms. The court ruled a genuine issue of material fact exists as to whether Defendants breached their duty to Drier and whether the breach was the proximate cause of any damage to Drier. We reverse the circuit court's decision.

On March 17, 1986, Drier filed a Notice of Appeal as to the circuit court's decision on his first cause of action. Defendants, on March 26, 1986, served Notice of Review concerning the court's decision on Drier's second cause of action. *See* SDCL 15-26A-22. Proof of service of such Notice of Review is present in the Supreme Court Clerk's file. Therefore, as Defendant has complied with all statutory prerequisites, this issue is properly before us. Yet, Drier did not treat the Notice of Review issue in his brief (filed May 15, 1986), as SDCL 15-26A-61 requires, nor did he file a reply brief in which the issue could have been addressed. *See* SDCL 15-26A-62.

We have often stated, in reference to an appellant, that an issue or argument not briefed and supported by authority is considered abandoned. *See, e.g., In re S.D.,* 402 N.W.2d 346, 352 (S.D.1987); *Corbly v. Matheson,* 335 N.W.2d 347, 348 (S.D.1983); *State v. Shull,* 331 N.W.2d 284, 285 (S.D. 1983); *Graham v. State,* 328 N.W.2d 254, 255 n. 2 (S.D.1982); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251, 258 (S.D.1976); *Schumacher v. R-B Freight Lines,* 73 S.D. 535, 539, 45 N.W.2d 458, 460 (1950); *Union Cent. Life Ins. Co. v. Codington County Farmers Fire & Lightning Mut. Ins. Co.,* 66 S.D. 561, 570, 287 N.W. 46, 50 (1939). *See generally* 5B C.J.S. *Appeal and Error* § 1803 (1958).

Regarding an appellee, "[t]he brief of the appellee *shall* conform to the requirements of § 15-26A-60...." SDCL 15-26A-61 (emphasis supplied). One requirement of SDCL 15-26A-60 is an argument "contain[ing] the contentions of the party with respect to the issues presented, the reasons therefor, and the citations to the authorities relied on." SDCL 15-26A-60(6). "If a notice of review is filed pursuant to § 15-26A-22, the appellee's brief *shall* contain the issues specified in the notice of review and the argument thereon as well as the answer to the brief of appellant." SDCL 15-26A-61 (emphasis supplied). By failing to treat Defendant's Notice of Review issue, Drier has acted contrary to state statute and we could therefore deem that he conceded the issue. 5 C.J.S. *Appeal and Error* § 1814b., at 227-28 (1958). *See* 5 Am.Jur.2d *Appeal and Error* § 686 (1962).[3] However, absent statute, Defend-

---

*Georgia Fed. Sav. & Loan Ass'n,* 247 Ga. 730, 734, 279 S.E.2d 442, 446 (1981); *Eunice v. Citicorp Homeowners, Inc.,* 167 Ga.App. 335, 336, 306 S.E.2d 395, 397 (1983). *See also Bimbo Builders v. Stubbs Properties,* 158 Ga.App. 280, 281, 279 S.E.2d 730, 731 (1981). This Court could have remanded this case to the circuit court in light of the unread disposition. Instead, we decided to consider it ourselves to avoid further delay (Drier commenced suit in 1982) in the ultimate decision of this case. *See Totem,* 584 P.2d at 20. Our review of the unread deposition reveals that information contained therein largely repeats material found in other depositions, in trial briefs and complaints, and raises no genuine issue of material fact. If we reversed the circuit court on this issue, we would be acting contrary to statute, which di-

rects us to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." SDCL 15-6-61. As no genuine issue of material fact is raised by the unread deposition, summary judgment in favor of Defendants will not be disturbed.

**3.** This rule does not exist to further appellant's interests but to relieve appellate courts of the burden of controverting arguments and assertions advanced for reversal. *See Reeves-Morgan Funeral Home, Inc. v. Morgan,* 175 So. 154, 156 (La.App.1937) (citing 5 C.J.S. *supra* § 1314b., at 229). Moreover, appellee's counsel has a duty to assist this Court in arriving at a just decision and to his or her client to maintain the correctness of the proceedings and judgment of the

ants are not entitled to a reversal as a matter of right, and in exercise of our discretion, we have, in this case, decided to review the matter and resolve any doubt, as to what the disposition should be, against Drier. *See Harvey v. Hall,* 471 P.2d 911 (Okla.1970); *Liberty Mut. Ins. Co. v. MacLeod,* 17 Ariz.App. 449, 498 P.2d 523 (1972); *Michels v. Young Metal Prods., Inc.,* 148 Ind.App. 502, 267 N.E.2d 572 (1971). *See generally* 5 C.J.S. *supra* § 1314b., at 229–39; 5 Am.Jur.2d *supra* § 686.[4]

We note recovery for negligent wrongful interference with a business relationship is generally disallowed. *Witte Transp. Co. v. Murphy Motor Freight Lines,* 291 Minn. 461, 193 N.W.2d 148 (1971); *Prosser and Keeton on The Law of Torts* § 130, at 1008 (5th ed. W. Keeton 1984); 2 F. Harper, F. James, and O. Gray, *The Law of Torts* § 6.11, at 346 (2d ed. 1986); Restatement (Second) of Torts § 766C and § 766C Illustration C (1979). *See also* 9 Cavitch, *Business Organizations* § 211.02[02], at 865 (1986). Malice or at least an intention to interfere with a business relationship is a required element in the majority of cases. 2 F. Harper, *supra* § 611, at 346; Prosser, *supra* § 130, at 1008.[5]

■ Based upon the preceding analysis, we conclude that Defendants raise a debatable issue or present a *prima facie* case

supporting reversal. Drier's failure to address the Notice of Review issue by brief or reply brief constitutes a confession of circuit court error and we therefore reverse the circuit court on Drier's second cause of action.

The judgment is affirmed in part and reversed in part.

MORGAN, J., and FOSHEIM, Retired Justice, concur.

WUEST, C.J., and SABERS, J., concur in part and dissent in part.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Chief Justice (concurring in part and dissenting in part).

I agree with the majority on issue I. However, I dissent from the majority's statement "Drier's failure to address the Notice of Review issue by brief or reply brief constitutes a confession of circuit court error ..." In my opinion, we should not adopt such a harsh rule. I do agree with Justice Sabers that defendants owed Drier a duty to use reasonable care in disposing of the finished forms, and whether the defendants used reasonable care in

---

trial court. *See Walls v. State ex rel. Malott,* 140 Ind. 16, 24, 38 N.E. 177, 179 (1894).

**4.** Some courts will reverse a trial court's decision if appellant raises a "debatable issue" which is unanswered by brief of appellee on the supposition that appellee, by not answering, has made a "confession of error" as to the trial court's decision. *See, e.g., Liberty Mut. Ins. Co.,* 17 Ariz.App. at 450, 498 P.2d at 524. Other courts, in similar situations, will presume appellee has made a confession of error if appellant has made a "*prima facie* case" to reverse. *See, e.g., Riley v. Sturdevant,* 12 Wash.App. 808, 811, 532 P.2d 640, 643 (1975); *Ellet v. Ellet,* 137 Ind.App. 96, 97, 205 N.E.2d 555, 556 (1965).

**5.** Our research has made us aware of emerging law indicating that negligent wrongful interference with a business relationship is, in some situations, an actionable tort. *See North Carolina Mut. Life Ins. Co. v. Plymouth Mut. Life Ins. Co.,* 266 F.Supp. 231 (E.D.Pa.1967); *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979); *Baldwin v. Marina City*

*Properties, Inc.,* 79 Cal.App.3d 393, 145 Cal.Rptr. 406 (1978). Recent treatises make mention of this trend. *See* 2 F. Harper, F. James, and O. Gray, *The Law of Torts* § 6.11, at 346 (2d ed. 1986); *Prosser and Keeton on The Law of Torts* § 130, at 1008 (5th ed. W. Keeton 1984). In those cases allowing recovery, liability is said to hinge on "the existence of some special reason for finding a duty of care" or "where a balancing of such factors as foreseeability, closeness of connection and moral blame seem to ... warrant such a result." Prosser, *id.,* § 130, at 1008 (footnote omitted). But, despite this authority, Defendants have advanced a "*prima facie*" argument, *Riley,* 12 Wash.App. at 811, 532 P.2d at 643, or raised a "debatable issue" supporting reversal, *Liberty Mut. Ins. Co.,* 17 Ariz. App. at 450, 498 P.2d at 524, which amounts to a confession of error by Drier when coupled with his failure to address the Notice of Review issue. *See* notes 3, 4 and accompanying text, *supra.*

disposing of the finished forms raises genuine issues of material fact.

SABERS, Justice (concurring in part and dissenting in part).

I would affirm the trial court on Issue 1 because "the settlement agreement of March 2, 1982, operated as a complete defense ... in that there was no genuine issue of material fact as to whether fraud or duress induced the settlement." *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968); *Hamaker v. Kenwel-Jackson Mach., Inc.*, 387 N.W.2d 515 (S.D.1986). To this extent, I agree with the majority opinion.

I would also *affirm* the trial court on Issue 2 because defendants owed a duty to Drier to use reasonable care in disposing of the finished forms. Whether they did or not raises genuine issues of material fact. *Trapp v. Madera Pacific, Inc.*, 390 N.W.2d 558 (S.D.1986). Therefore, there is no doubt to resolve against Drier and the *prima facie* case is appropriately rebutted. To this extent, I dissent.