This case involves an action on a release agreement. The plaintiffs, Roy J. Newburn and his wife Jewel Newburn, appeal from a summary judgment for the defendant Dobbs Mobile Bay, Inc. d/b/a Treadwell Ford (hereinafter "Treadwell Ford"). We reverse and remand.
The evidence, viewed in the light most favorable to the plaintiffs, suggests the following facts: The Newburns purchased a *Page 850 
used 1988 Kenworth tractor from Treadwell Ford to operate in a small trucking business known as Newburn Trucking. The title to the truck was in both of their names. The Newburns financed the purchase of the truck by a loan from Orix Credit Alliance, Inc.; the Newburns signed a note promising to pay Orix $49,224.
At the time of the purchase, an "odometer disclosure statement" was issued to the Newburns, reflecting that the odometer indicated 248,601 miles on the vehicle. The salesman at Treadwell Ford assured them that the truck was in good shape; that it was a one-owner truck; and that the odometer reading of 248,601 miles indicated the actual miles on the Kenworth truck.
In February 1991, the truck developed a transmission problem while on a trip in the Cullman, Alabama, area. The truck was taken to a shop in Cullman, where the transmission was replaced. While the new transmission was being installed in the truck, the Newburns contacted the original owners of the vehicle to determine if there was a warranty on the transmission. During this contact, Jewell Newburn learned that the vehicle's odometer had been replaced and that the actual mileage on the truck was over 170,000 miles more than the odometer disclosure statement reflected when the Newburns bought the truck.
The Cullman repair shop installed the wrong transmission on the truck. Jewell Newburn called Rick Doran, the general manager at Treadwell Ford, and informed him of the incorrect mileage and of the transmission problems. During this conversation, the Newburns say, Rick Doran admitted that the mileage had not been correctly stated to the Newburns when they bought the truck. They say Doran told them that, if they brought the truck to Treadwell Ford for repairs, Treadwell Ford would put in the correct transmission without charge. They further allege that Doran told the Newburns that they would be reimbursed for the $900 Cullman repair bill and for their downtime. During this contact, there was no mention of a release. The Newburns thereafter sent the truck to Treadwell Ford for the correct transmission to be installed. They were told that the truck would be ready on March 14, 1991.
On March 14, the Newburns returned to Treadwell Ford to pick up the Kenworth truck. Treadwell Ford presented them with a check for $600 and a general release absolving Treadwell Ford of all claims arising out of the Newburns' being given an incorrect mileage statement when they purchased the Kenworth truck. The Newburns were told that, in order to get their truck back, they had to sign the release. Treadwell Ford orally promised the Newburns that, if they signed the release, future repairs would be made at dealer cost for parts and labor. Treadwell Ford admits that this is the first time the Newburns were told they would have to sign a release in order to get the truck back. Treadwell Ford does not dispute the fact that it would not return the truck to the Newburns unless they signed this release. Roy Newburn testified that, faced with the choice of financial disaster or signing the release, he signed the release.[1] Jewell *Page 851 
Newburn was not named in the release, nor did she sign it. Treadwell Ford gave the Newburns the truck, and they left with the $600 check.
In early November 1991, the truck's turbo malfunctioned. Mr. Newburn telephoned Treadwell Ford for a price quote, but found a cheaper quote from a Peterbilt truck dealer for the part. Rather than purchasing the part from Treadwell Ford and having the truck repaired at Treadwell Ford's cost, Roy Newburn purchased the part from the Peterbilt dealer and installed it himself. When Mr. Newburn installed the turbo and started the engine, the engine continued to accelerate, resulting, he said, in the engine's "blowing up." The vehicle was then towed to Treadwell Ford so the Newburns could obtain a quote for it to be repaired. With the truck out of service, the Newburns could not make the loan payments to Orix Credit Alliance. Because of the default in payments, Orix Credit Alliance repossessed the vehicle; Orix sold it and sued the Newburns for a deficiency judgment. After Orix sued the Newburns, the Newburns filed a third-party complaint against Treadwell Ford. The third-party complaint alleged claims of fraud, breach of contract, breach of express warranty, negligence, and wantonness, arising out of the sale of the vehicle with the incorrect mileage, and it alleged that Treadwell Ford had failed to make repairs to the truck at dealer cost for parts and at reduced cost for labor, as the Newburns allege Treadwell Ford had agreed to do.
Treadwell Ford denied all of these allegations and affirmatively pleaded release and accord and satisfaction, based on the general release signed on March 14, 1991. Treadwell Ford also pleaded that, although Jewell Newburn did not sign the release, she had ratified it. The Newburns have since settled the case with Orix, so the only remaining litigation is between the Newburns and Treadwell Ford.
The first issue is whether Roy Newburn presented substantial evidence that he signed the release under economic duress; if he signed it under duress, it is void.
Roy Newburn does not deny that he read, understood, and signed the release. He argues that he signed the release under economic duress, because, he says, the transmission problem had placed him and his wife behind in their payments to Orix and because they had delivery contracts on March 14, 1991, and risked breaching those contracts if they did not have the use of the truck.[2] The Newburns also risked the loss of their house, which they had used as collateral on a loan they took out to make part of the down payment on the truck.
Because a question of duress is ordinarily a matter for the jury, see, Day v. Ray E. Friedman Co., 395 So.2d 54
(Ala. 1981), the Newburns claim the trial court erred in entering the summary judgment for Treadwell Ford. We agree.
A summary judgment is proper and must be affirmed on appeal if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Gray v. Liberty Nat'l Life Ins. Co.,623 So.2d 1156 (Ala. 1993). We review a summary judgment by the "substantial evidence" rule. Under this rule, once the movant has made a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the non-movant must rebut this showing by presenting "substantial evidence" creating a genuine issue of material fact. "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870 (Ala. 1989); Hensonv. Celtic Life Ins. Co., 621 So.2d 1268 (Ala. 1993); Ala. Code 1975, § 12-21-12(d). Also, reasonable doubts concerning *Page 852 
the existence of a material fact must be resolved in favor of the nonmoving party. Henson; Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
The essential elements of an economic duress claim were recently stated by this Court in Clark v. Liberty Nat'l LifeIns. Co., 592 So.2d 564, 567 (Ala. 1992):
 "Economic duress consists of: '(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.' International Paper Co. v. Whilden, 469 So.2d 560, 562 (Ala. 1985). The doctrine of economic duress applies only to 'special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto.' [Whilden], 469 So.2d at 563.
 " 'The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress.'
 "International Paper, 469 So.2d at 563 (quoting Chouinard v. Chouinard, 568 F.2d 430 (5th Cir. 1978))."
592 So.2d at 567.
A claim of economic duress cannot be based merely upon the claim that one has been the victim of another's hard bargain. Rather, the "wrongful act" prong of the test for economic duress is not satisfied unless the victim has acted in response to unlawful or unconscionable pressure.
The evidence presented by the Newburns, viewed in a light most favorable to them, tended to show that Rick Doran guaranteed them that if they brought their truck in to Treadwell Ford, then Treadwell Ford would repair the transmission at no cost and they would be reimbursed for the $900 Cullman repair and compensated for their downtime. Rick Doran did not tell the Newburns that Treadwell Ford would take possession of the vehicle and not return it unless they signed a release. The Newburns contend that they complained about having to sign the release and that they signed it because it was the only means by which they could get their truck back. Mr. Newburn testified that he was already late on his payments on the truck and that he ran the risk of breaching delivery contracts unless he signed the release. Treadwell Ford's evidence suggests otherwise, but this is the kind of factual dispute that should be submitted to the jury. If the jury found that Rick Doran lured the Newburns into bringing their truck to Treadwell Ford for repairs in an attempt to force them into signing a release, then it would follow that the Newburns were justified in signing the release in order to get their truck back, regardless of the terms of the release.
After reading the record and reviewing the evidence, we conclude that the Newburns' evidence created a jury question on their claims. Therefore, it was error to enter the summary judgment in favor of Treadwell Ford.
Because the court erred in entering the summary judgment, we do not reach the issue whether Jewell Newburn ratified the release agreement, which does not name her and which she did not sign. Nonetheless, the trial court and the parties may find our decision in Austin v. Cox, 523 So.2d 376 (Ala. 1988), instructive on this issue. In Austin, a police officer sued for damages based on injuries he had sustained in an automobile collision with Cox. Austin's insurer and Cox entered into a pro tanto release that released Austin from any claim Cox may have had against him arising out of the accident. "Cox, as drafter of the release, with full knowledge of the pending suit against him by Austin, did not include any language that would bar Austin's suit." 523 So.2d at 379. This Court held that, although Austin ratified the release agreement between Austin's insurer and Cox, the agreement did not have the effect of extinguishing Austin's claim, because the document did not mention Austin's *Page 853 
claim. In reaching that holding, this Court stated:
 "It is well established in Alabama that when an instrument is unambiguous its construction and legal effect will be based upon what is found in within its four corners. The determination of whether an instrument is ambiguous is a question of law for the court to decide. Only when the trial judge has ruled that the instrument is ambiguous in its terms as to the intent of [the] parties will it be submitted to a jury.
 "In this case, the burden was on Cox to affirmatively set out the limits of the release. Where, as here, no mention was made in the release between Cox and Austin's insurer of Austin's claim against Cox, the fact that Austin may have ratified that agreement has no effect on Austin's claim against Cox."
523 So.2d at 376, 379 (Ala. 1988) (emphasis added) (citations omitted). See also, Barber v. Fields, 624 So.2d 532, 537
(Ala. 1993).
Accordingly, the judgment appealed from is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, INGRAM, COOK and BUTTS, JJ., concur.
[1] The release stated, in part:
 "KNOW ALL MEN BY THESE PRESENTS That I/We, Roy J. Newburn, for and in consideration of $600.00 on check # 15152 Repair Orders # 5570 5574 for replacing clutch and transmission swap by Dobbs Mobile Bay Inc. an Alabama Corporation, the receipt and sufficiency of which is hereby acknowledged, have released, acquitted, and discharged and by these presents do release, acquit and forever discharge Dobbs Mobile Bay, Inc., an Alabama Corporation, its employees, heirs, successors and assigns, and other persons, firms or corporations, and all persons whomsoever, of and from any and all claims, demands, damages, expenses, including reimbursable expenses, actions, causes of action or suits at law or in equity, of whatsoever kind or nature, for and because of any matter or things done, omitted or suffered to be done by any one [sic] prior to and including the date hereof, on account of or arising out of customer erroneously being given incorrect mileage on 1988 Kenworth W9000, serial number 2XKWDB9X4JM503145 on invoice # 9973 dated 2/11/91 in which customer was erroneously provided incorrect information at the time of sale because previous owner had replaced speedometer.
 "That settlement is accepted by the undersigned in full compromise and release not only for all damages heretofore suffered because of the above described claim, but also as full settlement of any and all claims of every kind or nature, to include all claims of every kind or nature, to include all claims in contract or tort, suits at law or in equity of whatsoever kind or nature which may in the future grow out of or be attributable to or be found to pertain to said claim, it being the intent of the undersigned that this Release cover all damages, present or future, known or unknown, for and on account of Roy J. Newburn. . . ."
[2] The Kenworth truck was the only truck the Newburns owned and operated.