2001 SD 36

**DUNES HOSPITALITY, L.L.C., a South Dakota Limited Liability Company, Plaintiff and Appellee,**

**v.**

**COUNTRY KITCHEN INTERNATIONAL, INC., a Minnesota Corporation, Defendant and Appellant.**

**Country Kitchen International, Inc., a Minnesota Corporation, Third–Party Plaintiff and Appellant,**

**v.**

**Venerts Investments, Inc., a South Dakota Corporation, James Berven, and William Folkerts, Third–Party Defendant and Appellee.**

**Nos. 21395, 21400.**

Supreme Court of South Dakota.

Argued Jan. 10, 2001.

Decided March 21, 2001.

Thomas K. Wilka of Hagen, Wilka & Archer, P.C., Sioux Falls, SD, Attorneys for plaintiff and appellee Dunes Hospitality, L.L.C.

Lawrence R. Commers, Tim A. Staum of Mackall, Crounse & Moore, Minneapolis, MN, and Brian J. Donahoe of Cutler, Donahoe & Mickelson, Sioux Falls, SD, Attorneys for defendant and appellant Country Kitchen International, Inc.

SABERS, Justice.

[¶ 1.] Dunes Hospitality, LLC (Dunes) brought an action against Country Kitchen Int'l, Inc. (CKI) to set aside a settlement agreement on claims of fraud or economic

duress. The jury rejected the fraud claim but found economic duress. We hold that the law of economic duress applies but that these facts do not constitute economic duress.

## FACTS

[¶ 2.] Dunes was granted the right to manage a Country Kitchen restaurant in North Sioux City, South Dakota for a period of fifteen years. Dunes entered into an agreement for management of the restaurant with CKI on December 14, 1994. The members of Dunes included at least three lawyers, a law professor, a real estate broker and a doctor. In early 1996, the members became frustrated when the restaurant was still not meeting its revenue expectations. The members of Dunes asserted that the restaurant was mismanaged. They repeatedly sent complaints to CKI concerning poor service and the quality of food, apparently with no improvement. As problems persisted, the members of Dunes began to consider their options under the management agreement.

[¶ 3.] These options included firing CKI and replacing them with a new manager, running the restaurant themselves, or filing suit. Members of Dunes visited with CKI to discuss settlement of their claims. CKI attempted to force members of all four South Dakota locations to negotiate in unison. However, Dunes and the other restaurants refused, and eventually separate settlements were negotiated. On July 2, 1996, CKI sent Dunes a draft settlement agreement. Charles Sederstrom, a member of Dunes and an attorney in Omaha, Nebraska, was appointed to draft a counter proposal to CKI even though he and others opposed the settlement agreement. The settlement agreement was eventually executed by Jim Berven, a realtor and broker and general partner of Dunes, on August 22, 1996. The settlement agreement became final on August 30, 1996.

[¶ 4.] Pursuant to the settlement agreement, CKI agreed to designate a representative at its expense to perform management functions, waive all manager fees, modify the cash call provisions, and allow early termination of the agreement without cause. The agreement specifically provided that the law of Minnesota was to control its terms, that the agreement constituted the entire understanding between the parties, and unconditionally released CKI from any claims that relate to the management agreement.

[¶ 5.] On November 4, 1996, Dunes terminated the management agreement and filed this lawsuit. Dunes asserted that the settlement agreement was procured by fraud and economic duress and was therefore void. Dunes also alleged that CKI understated accounts payable to vendors by almost one-hundred percent, forced settlement by the all or nothing approach to the South Dakota restaurants, threatened complete withdrawal from the South Dakota locations, demanded additional cash calls and would have left the Dunes without service for the Country Inn and Suites Hotel to which the restaurant was affixed.

[¶ 6.] The jury found that the settlement agreement was not procured by fraud but by economic duress and was unenforceable. CKI appeals contending:

1. The trial court should have applied Minnesota law on economic duress.

2. The trial court incorrectly instructed the jury on economic duress.

3. Dunes failed to meet its burden of proof on economic duress, thereby requiring a directed verdict or judgment notwithstanding the verdict.

By notice of review Dunes raises one issue: Whether the trial court abused its discretion in curtailing Dunes rebuttal testimony.

## STANDARD OF REVIEW

[¶ 7.] "Jury instructions are considered as a whole and will not be deemed erroneous if they sufficiently and correctly state the applicable law." *Isaac*

*v. State Farm Mut. Ins. Co.*, 522 N.W.2d 752, 759 (S.D.1994). In addition, the trial court's ruling on a motion for a directed verdict or for judgment notwithstanding the verdict "are presumed correct and this Court will not seek reasons to reverse." *U.S. v. State*, 1999 SD 94, ¶ 7, 598 N.W.2d 208, 211. "If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate." *Id.* Questions of law are reviewed de novo. *Id.* ¶ 8, 598 N.W.2d 208.

### [¶ 8.] 1. WHETHER THE TRIAL COURT SHOULD HAVE APPLIED MINNESOTA LAW ON ECONOMIC DURESS.

■ [¶ 9.] The settlement agreement provides that it "shall be construed in accordance with the laws of the State of Minnesota." In South Dakota, a stipulation that provides the governing law is permitted. *See State ex rel Meierhenry v. Spiegel, Inc.*, 277 N.W.2d 298, 299 (S.D. 1979). CKI asserts that Minnesota law therefore controls. Minnesota courts refuse to recognize the defense of "economic duress" or "financial distress" in disputes involving contract law. *See Johnson v. Hubbard Broadcasting Inc.*, 940 F.Supp. 1447, 1456 (D.Minn.1996); *Prod. Credit Ass'n v. Farm Credit Bank*, 781 F.Supp. 595, 604 n. 7 (D.Minn.1991); *St. Louis Park Investment v. R.L. Johnson Inv.*, 411 N.W.2d 288, 291 (Minn.Ct.App.1987); *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn.1985).

■ [¶ 10.] We have generally recognized that parties may agree to be bound by the law of a particular state. *State ex rel Meierhenry*, 277 N.W.2d at 299. However, "such governing law agreements are subject to limitation and invalidation by the overriding public policy of the forum state." *Id.* (citing 16 AmJur2d, *Conflict of Laws*, § 46). Our legislature has also specifically stated that any contract which would exempt anyone "from responsibility for his own fraud ... [is] against the public policy of this state."

SDCL 53–9–3. "Therefore, foreign laws will not be given effect if, by doing so, contract provisions would be enforced which would be contrary to the settled public policy of the domestic forum." *State ex rel Meierhenry*, 277 N.W.2d at 300 (citations omitted).

[¶ 11.] The Restatement (Second) Conflict of Laws, § 187 recognizes that generally "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied." However, the comments to § 187 state:

> A choice of law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles.

Restatement (Second) Conflict of Laws, § 187 cmt. b. "South Dakota applies the provisions of the Restatement (Second) of Conflicts of Laws in order to resolve questions about which state's laws govern in particular factual situations." *Stockmen's Livestock Exch. v. Thompson*, 520 N.W.2d 255, 257 (S.D.1994) (citing *Chambers v. Dakotah Charter Inc.*, 488 N.W.2d 63 (S.D. 1992)).

[¶ 12.] Dunes alleged that it entered into the settlement agreement containing the choice of law provision because of fraud and economic duress. We are satisfied from the record that bona fide genuine issues of material fact existed concerning fraud and economic duress. That the jury eventually found against the position on fraud does not diminish the fact that these were more than bare assertions. Additionally, the jury found sufficient facts for economic duress. Although we reverse the economic duress issue as a matter of law, the facts in this record are sufficient for the purpose of considering the law to

be applied.[1] As such, the laws of South Dakota apply as the forum state. The most significant contacts were in South Dakota. *See Chambers*, 488 N.W.2d at 67 (adopting the most significant relationship approach). Dunes signed the agreement in South Dakota, the negotiators for CKI visited South Dakota to make their demands, the restaurant is in South Dakota, and most of the investors are from South Dakota.

[¶ 13.] Therefore, the use of South Dakota law to determine economic duress was not error.

## [¶ 14.] 2. WHETHER THE JURY INSTRUCTIONS ON ECONOMIC DURESS WERE IN ERROR.

[¶ 15.] CKI claims that the jury instructions on economic duress were in error because they were an inadequate statement of the law, were contradictory, failed to set forth reasonable alternatives, permitted lesser standards, and failed to identify the correct factors in determining the applicability of such a defense. We must determine whether South Dakota law recognizes the defense of economic duress, whether the jury instructions comport with that law and whether economic duress was established.

[¶ 16.] This Court has consistently stated that "it favors the compromise and settlement of disputed claims outside of court." *Parkhurst v. Burkel*, 544 N.W.2d 210, 212 (S.D.1996) (citations omitted). Yet, "[s]ettlements and releases are contractual agreements subject to rescission under the same grounds as any other contract." *Id.* In determining the validity of a settlement agreement in *Drier v. Great American Insurance Company*, 409 N.W.2d 357 (S.D.1987), we addressed, as a matter of first impression, the defense of economic duress.

[¶ 17.] In *Drier*, we recognized that economic duress or business compulsion is a relatively recent outgrowth of the common law doctrine of duress. *Drier*, 409 N.W.2d at 360. "Originally, common law duress was concerned exclusively with either physical imprisonment or threats of serious bodily harm." *Id.* (citing Dawson, *Economic Duress An Essay in Perspective*, 45 MichLRev 253, 254 (1947)). Yet, gradually the common law began to extend to encompass the field of economic pressure. *Id.* *Drier* acknowledged that "many authorities recognize that economic duress or business compulsion vitiates a contract" and explained generally that:

> Business compulsion/economic duress will generally be available where one party to a contract, in economic straits, is called upon to comply with demands made by the other contracting party (who is at least partly to blame for the strained condition and who is often in a position of superior bargaining power) and the former party is put into a position of either acquiescing to the latter's demands (which are in and of themselves unfair or wrongful) or suffering a serious business loss if accession is withheld.

*Id.* (citations omitted).

[¶ 18.] While tacitly approving this doctrine we specifically stated that because of the facts in *Drier* "[i]t is not jurisdictionally ripe that we now approve or disapprove of the business compulsion/economic duress doctrine." *Id.* We have not had occasion to revisit the issue until today.

[¶ 19.] "Many states have adopted the modern doctrine of 'business compulsion' or what is sometimes referred to as 'economic duress.'" 25 AmJur2d Duress and Undue Influence § 6 (1996). "The doctrine of economic duress applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract ... under such circumstances that the victim has little choice but to accede." *Newburn*, 657 So.2d at 852. The states adopting economic duress as a defense limit its availability

---

1. *See infra* discussion ¶¶ 30–33.

by requiring that three elements be met to justify its application.[2] Basically, these three elements are:

1. One side involuntarily accepted the terms of another; and

2. That circumstances permit no other reasonable alternative; and

3. That said circumstances were the result of a coercive wrongful act of the opposite party.

*See e.g., Oskey Gasoline & Oil Co., Inc., v. Continental Oil*, 534 F.2d 1281, 1286 (8th Cir.1976); *Saint Alphonsus Med. Center*, 861 P.2d at 77; *Mellon*, 493 N.W.2d at 703; *Zeilinger*, 823 P.2d at 657. All three elements must be met to sustain a defense of economic necessity. *Id.*

[¶ 20.] To establish the first prong of this test, the plaintiff has the burden to "go beyond the mere showing of a reluctance to accept and of financial embarrassment." *Oskey*, 534 F.2d at 1286. There must be a demonstration of acts on the part of the defendant which produced economic duress. It "must be proven by evidence that the duress resulted from the defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *Id.* "The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract." *Newburn*, 657 So.2d at 852.

[¶ 21.] In addition, the second prong requires that the circumstances permit no other reasonable alternative. *Oskey*, 534 F.2d at 1286. "In determining whether a reasonable alternative is available, we employ an objective test." *Zeilinger*, 823 P.2d at 658. Therefore, "the outcome depends on the circumstances of each case." *Id.* The availability of a legal resolution is one such circumstance. *Oskey*, 534 F.2d at 1286.

[¶ 22.] The third prong requires (a) coercive wrongful acts on the part of the other party and (b) a causal link between the coercive wrongful acts and the circumstances creating economic duress. *Id.* These acts include acts which are criminal or tortious. *Id.* A claim of economic duress cannot be based upon a claim that one has been the victim of a hard bargain. *Newburn*, 657 So.2d at 852. The party asserting economic duress must establish they were the victim of unlawful or unconscionable pressure. *Id.*

[¶ 23.] All negotiations inherently involve a certain amount of pressure and coercion. However, to satisfy the requirements of economic duress "that pressure must be wrongful and not all pressure is wrongful." 25 AmJur2d *Duress and Undue Influence* § 7 (1996). A party's actions, rather than motive, govern the determination of wrongful and coercive. *Id.* A defense of economic necessity cannot be maintained when a party's actions are lawful, or threats to carry out that which the law entitles them to do. *Id.* Factors to be considered for economic duress include: the age and mental ability, financial condition, business expertise, absence of good faith, adequacy of consideration and the adequacy of a legal remedy of the party seeking relief. *Id.*

[¶ 24.] Recognizing that a defense of economic duress is available in South Dakota, we must determine whether these jury instructions were in error. "Under our standard of review we construe jury instructions as a whole to learn if they provided a full and correct statement of the law." *Veeder v. Kennedy*, 1999 SD 23, ¶ 32, 589 N.W.2d 610, 618 (citations omitted). Jury instructions that mislead, conflict or confuse the jury create reversible error. *Schaffer v. Edward Jones & Co.*, 1996 SD 94, ¶ 19, 552 N.W.2d

---

**2.** *See Newburn v. Dobbs Mobile Bay Inc.*, 657 So.2d 849, 852 (Ala.1995); *Zeilinger v. SO-HIO Alaska Petroleum Co.*, 823 P.2d 653, 657 (Alaska 1992); *Saint Alphonsus Med. Center v.* *Krueger*, 124 Idaho 501, 861 P.2d 71, 77 (1992); *Mellon v. Norwest Bank*, 493 N.W.2d 700, 703 (N.D.1992); *see also* 25 AmJur2d Duress and Undue Influence § 7 (1996).

801, 808. We employ a two prong approach to jury instructions: "A party challenging as erroneous a jury instruction must show not only 'that the instruction was in error, but also that it was prejudicial error to the effect that under the evidence, the jury ... probably would have returned a different verdict.'" *Veeder*, 1999 SD 23 at ¶ 34, 589 N.W.2d at 618.

[¶ 25.] Jury instruction 23 provided:

> Economic duress or business compulsion voids a contract induced thereby. Business compulsion, or economic duress, will generally be available where one party to a contract, in difficult economic straits, is called upon to comply with demands made by the other contracting party who is at least partly to blame for the former's strained condition and who is often in a position of superior bargaining power, and the former party is put into a position of either acquiescing to the latter's demands, which are in and of themselves unfair or wrong, or suffering a serious business loss if agreement is withheld.

This general statement was taken from *Drier* and was never intended to be used verbatim as a jury instruction.

[¶ 26.] Jury instruction 24 provided:

> To prove that the mutual release is unenforceable due to economic duress or business compulsion, the plaintiff must prove each of the following elements by the greater weight of the evidence:

(1) wrongful acts or threats by defendant;

(2) financial distress caused by those wrongful acts or threats;

(3) and the absence of any reasonable alternative to the terms presented by the wrongdoer.

"Wrongful acts or threats" are acts which are criminal, tortious *or even merely wrongful in the moral sense*.[3] (Emphasis added).

[¶ 27.] A comparison of these instructions with applicable law reveals that each instruction creates a different legal standard for economic duress. Instruction 23 allowed the jury to find economic duress if the agreement was "unfair" or that Dunes was "suffering a serious business loss" that is "partly to blame from defendant's conduct" and permitted "acquiesc[ence]" rather than the required involuntary consent. Instruction 23 allowed a finding of economic duress based on circumstances less egregious than required by law and does not mandate the consideration of Dunes' reasonable alternatives or the proper causation requirement. Instruction 23 was in error in that it substantially reduced the standard for economic duress in these respects. Additionally, instruction 24 allowed the consideration of a wrongful act to include those "merely wrongful in the moral sense." We reject these as improper statements of the law of economic duress.

[¶ 28.] A decision to merely "acquiesce" does not rise to the level of coercion required to prove economic duress.[4] When read conjunctively with instruction

---

3. CKI proposed the following instruction: Plaintiff must prove by a preponderance of the evidence that circumstances permitted no alternatives. If you find that at the time of entering into the Settlement Agreement, Plaintiff possessed a legal remedy of refusing to sign and, instead, suing the Defendants for damages, or operating the restaurant themselves, the Plaintiff has failed to show that circumstances permitted no other alternative.
It would not have been error under these circumstances to give this instruction if it had been modified to provide for "reasonable" alternatives.

4. It is interesting to note that during their deliberation, the jury requested the definition of "acquiesce" from the trial court. The trial court provided the following definition: To agree without arguing; to comply without protest, to comply. This does not meet the legal requirement of coercion or involuntary consent.

24, these instructions conflict and mislead or confuse the jury by failing to require the proper elements. When read as a whole, as we are required to do, these instructions are an inadequate statement of the law. *Veeder*, 1999 SD 23 at ¶ 32, 589 N.W.2d at 618. Through the relaxed standards identified in instruction 23, the defendant had an unfair advantage. These jury instructions as a whole do not "correctly state the law and inform the jury." *See Isaac*, 522 N.W.2d at 760. While instruction 24 is closer to stating the applicable law, absent the language on morally wrongful conduct, it failed to cure the defects present in instruction 23. Therefore, the instructions were in error and we reverse.

**[¶ 29.] 3. WHETHER DUNES FAILED TO MEET ITS BURDEN ON ECONOMIC DURESS, THEREBY REQUIRING A DIRECTED VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT.**

[¶ 30.] At the close of Dunes case-in-chief, CKI made a motion for a directed verdict which was denied. After the jury's finding of economic duress, CKI made a motion for judgment notwithstanding the verdict, which was also denied. The trial court's ruling on a motion for judgment notwithstanding the verdict is reviewed by the abuse of discretion standard. *Treib v. Kern*, 513 N.W.2d 908, 914 (S.D.1994). We give great deference to the trial court and the jury with regard to findings of fact and credibility determinations, but we review questions of law de novo, with no deference given to the trial court's legal conclusions. *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771.

[¶ 31.] In reviewing the record, even in the light most favorable to the jury's verdict, we are unable to find sufficient evidence to support a finding of economic duress. Dunes has failed to prove the requirements necessary for economic duress. Therefore, it was error for the trial court to deny CKI's motion for judgment notwithstanding the verdict.

[¶ 32.] To establish economic duress, Dunes was required to demonstrate that no reasonable alternative existed but to accede to the wrongful and coercive demands of CKI. This requirement was not met on these facts. We employ an objective test to determine whether reasonable alternatives were available to a party asserting economic duress as a defense. *See Zeilinger*, 823 P.2d at 658. Dunes had the option of terminating their affiliation with CKI or filing suit. It is apparent from the record that these options were known to Dunes and the topic of much discussion. As indicated, several of the members urged rejection of the settlement agreement and proposed terminating the management contract and bringing suit against CKI. In fact, this is exactly what Dunes did two months after the agreement was signed. Clearly, Dunes consisted of sophisticated members and investors, and was well represented by experienced, competent lawyers. Dunes' decision to enter into this settlement agreement was the result of an informed and deliberate decision. The proposals to either terminate the association with CKI or seek a legal remedy were not unreasonable alternatives.

[¶ 33.] We acknowledge that a party asserting economic duress under these circumstances has a difficult burden to overcome. The defense of economic duress will not generally be available absent special, unusual or extraordinary circumstances. *See Newburn*, 657 So.2d at 852. Dunes has failed to demonstrate that this was such an occasion.

[¶ 34.] Therefore, we reverse and direct judgment consistent with this opinion.[5] Based on our disposition of this case,

---

5. Note that we are not overturning a valid jury verdict. This verdict was based on incor-

rect jury instructions and flawed. Based on proper jury instructions, we conclude that

we need not address Dunes assertion of error concerning rebuttal testimony.

[¶ 35.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 36.] AMUNDSON, J., concurs in result.

AMUNDSON, Justice (concurring in result).

[¶ 37.] I agree with the majority that Dunes failed to show fraud or economic duress on the part of CKI. I, however, must part company due to the majority's failure to apply Minnesota law, rather than South Dakota's. As the majority points out, Dunes failed to show that one of the public policy exceptions to the validity of a choice of law provision, i.e. fraud or economic duress, exists. The majority recognizes that the settlement agreement provides that it "shall be construed in accordance with the laws of the State of Minnesota," but curiously fails to express why that state's law should not apply.

[¶ 38.] There is a presumption of validity for choice of law clauses. *Elgar v. Elgar*, 238 Conn. 839, 679 A.2d 937 (1996); *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763 (D.C.Cir.1992); *Delhomme Indust. Inc. v. Houston Beechcraft Inc.*, 669 F.2d 1049 (5th Cir.1982). Unless the challenger to the clause clearly shows it to be against public policy, the clause will be enforced. *S. Leo Harmonay Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014 (S.D.N.Y.1984), judgment aff'd, 762 F.2d 990 (2nd Cir. 1985).

> Courts favor, and tend to uphold, choice of law provisions in contracts, particularly when such provisions are used in interstate transactions. Finally, a court will be more likely to uphold the provisions of a contract made in a business transaction than the terms impressed by adhesion on an unknowledgeable con-

sumer. The more commercial the context of the transaction ... the greater the need for validation and stronger the presumption of validity.... The burden of showing illegality is upon the party asserting it and it is not sufficient merely to create suspicion and suggest doubts as to its illegality.

*Delhomme*, 669 F.2d at 1058–59 (internal citations omitted). The mere allegations of fraud and economic duress do not overcome this heightened burden. At a minimum, the trial court should have made a preliminary ruling as to whether the contract containing the choice of law clause was invalid under South Dakota law before it applied such law. *See* Restatement (Second) of Conflicts of Laws § 187 cmt. b, illus. 3; *see also Unarce v. Staff Builders, Inc.*, 61 F.3d 912 (9th Cir.1995) (unpublished opinion).

[¶ 39.] I submit Dunes did not overcome its burden of proving the clause invalid by merely alleging fraud and economic duress. In fact, the jury found against Dunes on the issue of fraud, and the issue was not appealed. If we allowed the mere allegations of one party to overcome contractual obligations, then what is to stop every plaintiff subject to an apparently unfavorable choice of law provision from making frivolous allegations of fraud or economic duress. Contract law should not depend on the legal tactics of the allegedly aggrieved party. While the end result is the same under Minnesota law, as economic duress is not recognized in that jurisdiction, the majority should explain why the bargained for, at arms length agreement of the parties does not control. The majority provides no authority for its non-observance of the parties' agreement.

[¶ 40.] Therefore, I concur in result only.

reasonable minds would not differ on the non-existence of economic duress under these

circumstances.