2004 SD 81

**BUTLER MACHINERY CO., a Foreign Corporation, Plaintiff and Appellee**

v.

**MORRIS CONSTRUCTION CO., a South Dakota Corporation, Defendant and Appellant.**

No. 22735.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided June 23, 2004.

---

Robert Gusinsky and Brian Iverson of Lynn, Jackson, Shultz, & Lebrun, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

James P. Hurley of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for defendant and appellant.

LOVRIEN, Circuit Judge.

[¶ 1.] Morris Construction Company (Morris) appeals the grant of summary judgment entered in favor of Butler Machinery Company (Butler) in the amount of $122,284.50 plus costs and interest. We affirm the trial court's grant of summary judgment for breach of contract but reverse and remand to the trial court for further proceedings concerning the resulting amount owed by Morris under the terms of the contract.

## FACTS

[¶ 2.] Morris and Butler had an extensive history of business dealings relating to repair work for construction equipment, purchase of parts, equipment rental, and equipment purchase. On January 11, 1999, the parties' previous agreements relating to these matters were consolidated into a single contract and security agreement. According to the terms of that agreement the total amount owed by Morris to Butler was $217,445. The contract provided that Morris would pay Butler a single payment of $5,497.29 in February 1999 and then follow with forty-seven monthly installments of $5,547 to conclude in January 2003.

[¶ 3.] In the agreement, Morris also granted Butler a purchase money security interest in six pieces of construction equipment: a Caterpillar 140G motor grader, a

Caterpillar D5C crawler dozer, a Caterpillar 966F loader, two Load King semi equipment trailers and a Caterpillar 416 backhoe. Butler filed a UCC–1 financing statement with the South Dakota Secretary of State to perfect this security interest. However, in October 2000 Morris stopped making the payments as required by the contract. There were no scheduled monthly payments made to Butler after the September 2000 installment. In May 2001, Butler repossessed the crawler dozer. In June and July 2001, Butler also repossessed the motor grader and two semi trailers. Thereafter, repossession of the loader occurred in August 2002.

[¶ 4.] Concerning this equipment, Morris alleged in the proceedings below that Butler reported to it that at least some of this repossessed machinery had been sold. Yet, Butler did not provide any documentation to Morris concerning these sales. Additionally, no accounting was provided by Butler that indicated what amounts were due and owing under the contract nor was any amount given to Morris concerning the redemption of the collateral. Butler filed suit against Morris on October 31, 2001, to recover the remaining amounts owed on the contract. After delays for what appears to have been fruitless discovery requests, the circuit court eventually entered summary judgment in favor of Butler in the amount of $122,284.50 plus costs and interest. Morris appeals the grant of summary judgment raising the following issues:

Whether the trial court erred in granting summary judgment to Butler for Morris' alleged breach of contract.

Whether the trial court erred in granting summary judgment to Butler when the amount Morris owed Butler under the terms of the contract was disputed.

STANDARD OF REVIEW

[¶ 5.] This Court's standard of review for the grant or denial of summary judgment by the trial court is clear.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, "[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment."

*Chilson v. Kimball School Dist. No. 7–2,* 2003 SD 53, ¶ 7, 663 N.W.2d 667, 669 (quoting *Greene v. Morgan, Theeler, Cogley & Petersen,* 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459).

CHOICE OF LAW

[¶ 6.] "We have generally recognized that parties may agree to be bound by the law of a particular state." *Dunes Hospitality, L.L.C. v. Country Kitchen Intern., Inc.,* 2001 SD 36, ¶ 10, 623 N.W.2d 484, 488 (citing *State ex rel Meierhenry v. Spiegel, Inc.,* 277 N.W.2d 298, 299 (S.D.1979)). While parties may so choose, their agreement is "subject to limitation and invalidation by overriding public policy" concerns. *Id.* This Court will not give effect to laws of other jurisdictions if they

are contrary to the public policy of South Dakota. *Id.*

[¶ 7.] In this case, Butler and Morris agreed to be bound by North Dakota's version of the Uniform Commercial Code. This choice of law agreement is not contrary to the public policy of the State of South Dakota. The North Dakota law applicable to this case is substantially similar to the law of South Dakota and, in fact, this Court has applied North Dakota's UCC on occasion. *See e.g. Husky Spray Service, Inc. v. Patzer,* 471 N.W.2d 146 (S.D.1991). Therefore, this commercial contract dispute is properly governed by the North Dakota UCC.

## ISSUE ONE

[¶ 8.] **Whether the trial court erred in granting summary judgment to Butler for Morris' alleged breach of contract.**

[¶ 9.] On appeal, Morris claims that it was entitled to various credits that should have been applied to the remaining balance due on the contract. Morris maintains these credits resulted from various business dealings between the parties prior to the execution of the contract on January 11, 1999. As a result, Morris argues the trial court erred in granting summary judgment for breach of contract because of the disputed amount of these credits and whether they had been properly applied to the contract amount.

[¶ 10.] We conclude that the trial court did not err in granting summary judgment on the issue of breach of contract. The very terms of the contract signed by both parties contradicts Morris' assertion. The language of that agreement provides: "You agree that this and any other written agreement pertaining to this sale contain all of the terms and provisions of your

agreement with us and that we have not made any oral warranties or promises regarding the secured property." The contract language operated to limit the parties' agreement to what was contained within the four corners of the document unless supplemented by additional written agreements. The terms of that agreement are clear and unambiguous.

[¶ 11.] In addition, the parol evidence rule prevents a party to an unambiguous contract to challenge its terms by asserting alleged oral variations to what is written in the document. This rule, as codified in SDCL 53–8–5, provides: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." *See also* NDCC § 9–06–07.[1]

[¶ 12.] We have recognized that the parol evidence rule is one of substantive law, not of evidence. *Hofeldt v. Mehling,* 2003 SD 25, ¶ 11, 658 N.W.2d 783, 787 (citing *Auto–Owners Ins. Co. v. Hansen Housing, Inc.,* 2000 SD 13, ¶ 14, 604 N.W.2d 504, 510). Furthermore,

> By its express statutory language, the rule does not apply to conduct and statements taking place after a contract has been executed. Thus, evidence of negotiations occurring after a written agreement will not be excluded by the parol evidence rule.

*Id.* (citing E. Allan Farnsworth, *Farnsworth on Contracts* § 7.3, § 7.6, at 228 (2d ed 1998)). Therefore, only subsequent agreements can alter or waive the rights and remedies expressed in a contract. *Id.* (citing *Moe v. John Deere Co.,* 516 N.W.2d 332, 335 (S.D.1994)).

---

1. The language of NDCC § 9–06–07 is identical to that of SDCL 53–8–5.

[¶ 13.] Here, no additional written agreements were presented by Morris to supplement, modify, or rescind any terms of the contract. Moreover, Morris has neither alleged nor argued that the contract is ambiguous. As a result, the assertions by Morris that there were oral agreements by the parties regarding adjustments of Morris' debt based on credits or offsets from dealings that occurred prior to the signing of the contract were properly disregarded by the trial court.

[¶ 14.] As the trial court recognized, this agreement was clear and unambiguous. Morris was to make monthly payments of $5,547 and its failure to make such monthly payments constituted a default under the terms of that agreement. There was no genuine dispute of material fact that Morris was in default after September 2000 when it made no further monthly payments. Summary judgment was therefore proper concerning Morris' breach of contract.

ISSUE TWO

[¶ 15.] **Whether the trial court erred in granting summary judgment to Butler when the amount Morris owed Butler under the terms of the contract was disputed.**

2. SDCL 57A–9–608 provides that after paying expenses, proceeds of the disposition of collateral are to be used for the satisfaction of the obligation secured. NDCC § 41–09–105 enumerates identical rules for application of proceeds.

3. For example, Morris noted its claim that the fair market value of the repossessed equipment was $304,000 (against Butler's claim of $122,284.50), and requested that "summary judgment be denied until discovery of the material facts determines the true balance owed."

[¶ 16.] We conclude that the trial court's grant of summary judgment was not proper on the issue of the amount owed under the contract. We do so because the amounts owed under the contract depend, at least in part, on the amount of the payments made pursuant to the contract and those proceeds generated by the sale or lease of equipment repossessed under the terms of the contract.[2] Morris disputed the amount Butler claimed was owed under the contract and had diligently sought an accounting concerning what Butler did with the repossessed collateral.[3] However, it appears from the record that a full accounting of the repossessed collateral has never been provided.[4]

[¶ 17.] Viewing the evidence in the light most favorable to the non-moving party, as we are required to do, the settled record established that Butler repossessed various items of equipment owned by Morris; that this equipment was valuable; that Butler generated proceeds from the sale or lease of this equipment; and, that Butler failed to affirmatively show that the proceeds were properly applied to the balance due under the contract. These facts alone established a genuine issue of material fact and was fatal to Butler's claim that it was entitled to summary judgment on the issue of damages.

4. The debtor is entitled to an accounting when collateral is repossessed and then disposed of by the creditor. SDCL 57A–9–611 provides in pertinent part that the secured party shall send an authenticated notification of disposition to the debtor. Cf. NDCC 41–09–108. SDCL 57A–9–613 includes the statement that the debtor is entitled to an accounting for the unpaid indebtedness in its list of contents for a sufficient notification of disposition. Cf. NDCC 41–09–110. These rules cannot be waived or varied except in an authenticated agreement entered into after default SDCL 57A–9–602; SDCL 57A–9–624. Cf. NDCC 41–09–99; NDCC 41–09–119.

[¶ 18.] It is well-settled that summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). Furthermore, "When considering a motion for summary judgment, the formal issues presented by the pleadings are not controlling and a party may not rest upon the mere allegations contained therein." *Aetna Life Ins. Co. v. McElvain*, 363 N.W.2d 186, 188 (S.D.1985) (citing *Hughes–Johnson Co. v. Dakota Midland Hospital*, 86 S.D. 361, 195 N.W.2d 519 (1972)). Yet, in the case at bar Butler did just that—it rested on the allegation that Morris owed $122,284.50. "The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Ward v. Lange*, 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249 (citations omitted).

[¶ 19.] Had Butler provided a full accounting of what it had done with the repossessed collateral and how those proceeds were applied to the balance due under the contract it *may* have been able to establish that it was entitled to summary judgment. Without this accounting, however, there remains a genuine issue of material fact as to which pieces of repossessed equipment, if any, Butler sold, leased or still has in its possession and whether the proceeds from any sale or lease of repossessed equipment were properly applied to the amounts owed under the contract.[5] These are matters to be resolved at trial.[6] Viewing the evidence in the light most favorable to the non-moving party, we conclude that a genuine issue of material fact existed as to the amount Morris owed under the contract. Accordingly, we reverse the grant of summary judgment on this issue and remand for further proceedings consistent with this opinion.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 21.] LOVRIEN, Circuit Judge for SABERS, Justice, disqualified.

---

5. We note that Morris has a statutory right to notice of the disposition of collateral. *See* SDCL 57A–9–611 *and* NDCC § 41–09–108. Morris also has a statutory right to redeem the collateral by fulfilling the obligation it secured in addition to paying reasonable expenses. SDCL 57A–9–623 *Cf.* NDCC 41–09–118. A debtor's statutory right of redemption may be waived, but only by agreement after the default. SDCL 57A–9–624. *Cf.* NDCC § 41–09–119. Because Butler apparently did not give Morris proper notice as required by these statutes, it is unknown whether Morris would have redeemed the repossessed equipment for more than the amount Butler received by its sale, thus reducing the amount due under the contract.

6. In addition, the commercial reasonableness of any sale(s) of collateral may present an additional issue of material fact at trial. Generally, when a creditor sues for a deficiency, he bears the burden of proving that disposition of the collateral was conducted in compliance with the Uniform Commercial Code. *First Bank of South Dakota v. Haberer Dairy & Farm Equipment, Inc.*, 412 N.W.2d 866, 870 (S.D.1987) (citations omitted). While *First Bank* was interpreting the pre–2001 UCC, we believe that the revised version has not changed this burden. Butler must show that any sale of collateral was accomplished within the mandates of the UCC.