**BELL, INC., Plaintiff,**

v.

**IFS INDUSTRIES, INC., Defendant.**

**No. CIV 09–4187–RAL.**

United States District Court,
D. South Dakota,
Southern Division.

June 16, 2010.

Kent R. Cutler, Cutler & Donahoe, LLP, Sioux Falls, SD, for Plaintiff.

William P. Fuller, Hilary L. Williamson, Fuller & Sabers, LLP, Sioux Falls, SD, for Defendant.

## ORDER GRANTING MOTION TO CHANGE VENUE

ROBERTO A. LANGE, District Judge.

### I. INTRODUCTION

Plaintiff Bell, Inc. ("Bell") started this action in South Dakota in November of 2009, against Defendant IFS Industries, Inc. ("IFS"). Bell manufactures express courier paperboard. IFS supplied Bell with hot melt adhesive for use on the closure flap of several types of such envelopes. The Complaint stated claims for breach of express warranty, breach of im-

plied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability, all for alleged defects in a particular hot melt adhesive—M781 adhesive—supplied by IFS.

IFS filed a Notice of Removal (Doc. 1) with this Court on December 18, 2009. On February 9, 2010, IFS filed a Motion to Change Venue (Doc. 13) under 28 U.S.C. § 1404(a). This Court grants the Motion to Change Venue for the reasons explained below.

## II. FACTS

As the basis for its motion, IFS requests that the Court enforce choice-of-law and forum-selection clauses within the Terms and Conditions of Sale ("Terms and Conditions") that IFS contends was attached to every invoice it sent to Bell. The Terms and Conditions state:

> This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to its conflicts of laws. Any and all disputes arising under this Agreement shall be resolved in a state or federal court of competent jurisdiction within the Commonwealth of Pennsylvania, and Buyer hereby irrevocably submits to the jurisdiction of any such court for the resolution of any and all disputes arising hereunder.

(Doc. 14, at 1); (Doc. 15–1, at 3).

The Terms and Conditions further provided:

> If for any reason Buyer fails to accept this Agreement in writing, any conduct that demonstrates the existence of a contract, including, without limitation, the delivery of items in accordance with this Agreement prior to written acceptance hereof and acceptance of such items by Buyer, shall constitute an agreement to all of the terms and conditions stated herein.

(Doc. 15–1, at 2).

IFS submitted affidavits by employees Jean Defrees (Doc. 23), a customer service representative, and Doris Davis (Doc. 24), a billing specialist. Defrees stated that "IFS Industries has a system in place whereby every invoice that is sent out to its customers contains" the Terms and Conditions, the system was in place when IFS submitted the applicable invoices to Bell, and the Terms and Conditions included the forum selection clause. Davis averred that "every mailing from the billing department at IFS" since December 2006 contained the Terms and Conditions on a separate two-sided document, and that Davis personally placed the Terms and Conditions document within all mailings to customers. According to Davis, prior to December 2006, IFS included the Terms and Conditions within its printed invoice documents.

In opposition, Bell argues that the parties never agreed, negotiated, or even discussed forum selection or choice of law, and that the parties have no written, oral, or implied contract containing a forum-selection clause. Bell filed an affidavit by its Director of Finance, Samantha Parsons, attesting that "[t]he retained invoices Bell received from IFS with respect to the M781 adhesive supplied in late 2008 which is at issue in this case do not include a copy of the Terms and Conditions of Sale" filed as Doc. 15–1, and that "discussions with IFS were limited to product, price, quality, payment terms, and shipment." (Doc. 17, at 1–2). Parsons acknowledged that "a small number of [invoices] include a copy of the Terms and Conditions, all of which were for transactions in 2006 or 2007." *Id.* at 2.

Bell also contends that, assuming arguendo that the parties agreed to a forum-

selection clause, the clause is not enforceable because it is unreasonable and unjust due to Bell's selection of its home state as forum, the large majority of witnesses in South Dakota, and the presence in South Dakota of the defective goods forming the basis of the lawsuit.

## III. DISCUSSION

### A. Formation of Forum–Selection Clause

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir.2009) (citing *Prudential Ins. Co. of America v. Kamrath*, 475 F.3d 920, 924 (8th Cir.2007)). Under South Dakota law, "a contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." SDCL 53–1–4; *O'Neill Farms, Inc. v. Reinert*, 2010 SD 25, ¶ 12, 780 N.W.2d 55. "The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." *Id.* (quoting *Briggs v. United Services Life Ins. Co.*, 80 S.D. 26, 30, 117 N.W.2d 804, 807 (1962)). The Supreme Court of South Dakota has "generally recognized that parties may agree to be bound by the law of a particular state." *Butler Machinery Co. v. Morris Const. Co.*, 2004 SD 81, ¶ 6, 682 N.W.2d 773, 776 (quoting *Dunes Hospitality, L.L.C. v. Country Kitchen Int'l., Inc.*, 2001 SD 36, ¶ 10, 623 N.W.2d 484, 488). However, South Dakota courts will "not give effect to laws of other jurisdictions if they are contrary to the public policy of South Dakota." *Id.*

It is unclear whether the last act necessary to complete and validate the contracts for the purchase and sale of hot melt adhesives occurred in South Dakota, the location where Bell accepted the goods and invoices from IFS, or in Pennsylvania, where IFS received payment and presumably purchase orders from Bell for the transactions. Regardless, the substantive law of both South Dakota and Pennsylvania command the same result under the circumstances in this case.

In South Dakota, the elements necessary for formation of a contract are the following:

(1) Parties capable of contracting;

(2) Their consent;

(3) A lawful object; and

(4) Sufficient cause or consideration.

S.D. Codified Laws ("SDCL") § 53–1–2 (2009).

"To form a contract, there must be a meeting of the minds or mutual assent on all essential terms." *American Prairie Const. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir.2010) (quoting *Jacobson v. Gulbransen*, 623 N.W.2d 84, 90 (S.D. 2001)). "Consent of the parties to a contract must be: (1) [f]ree; (2) mutual; and (3) [c]ommunicated by each to the other." *Id.* (citing SDCL 53–3–1). The party asserting the existence of a contract bears the burden of establishing its enforceability. *See Rusch v. Kauker*, 479 N.W.2d 496, 505 (S.D.1991).

Similarly, in Pennsylvania, the elements necessary for formation of a contract are the following: "an offer, acceptance, and consideration." *Star Spa Servs., Inc. v. Robert G. Turano Ins. Agency, Inc.*, 595 F.Supp.2d 519, 530 (M.D.Pa.2009) (quoting *Hatbob v. Brown*, 394 Pa.Super. 234, 575 A.2d 607, 613 (1990): *see also Koken v. Steinberg*, 825 A.2d 723, 729 (Pa.Cmwlth.2003)); *Richter v. Pfundt*, 2009 WL 5064383, 2009 U.S. Dist. LEXIS 120783, No. 09–2604 (E.D.Pa. 2009) ("The essential elements of a contract are an offer, acceptance, and consid-

eration or a mutual meeting of the minds.") (citing *Yarnall v. Almy,* 703 A.2d 535, 538 (Pa.Super.1997) (citing *Jenkins v. County of Schuylkill,* 441 Pa.Super. 642, 658 A.2d 380, 383 (1995))).

Under both the South Dakota Uniform Commercial Code and the Pennsylvania Commercial Code, "an order ... to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer." SDCL 57A–2–206; 13 Pa. C.S. § 2206(a)(2) (2010).

■ IFS argues that Bell acquiesced to the forum-selection clause by receiving the invoices with the attached Terms and Conditions document and accepting the items. A buyer's failure to object to the terms included with the invoice may suffice to bind the buyer to the seller's forum-selection clause. *See K.K.D. Imports, Inc. v. Karl Heinz Dietrich GmbH & Co. Int'l Spedition,* 36 F.Supp.2d 200, 203 (S.D.N.Y. 1999). In *K.K.D. Imports,* the Court held that an established course of dealing evidenced the parties' intention to be bound by the terms of defendant's invoices, which incorporated a forum selection clause by reference, for 41 shipments prior to the shipments at issue in the case *Id.*

IFS also argues that the course of dealing between the parties establishes that Bell has acquiesced to the forum-selection clause and is bound by its terms. South Dakota and Pennsylvania law identically define a "course of dealing" as "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." SDCL 57A–1–303(b); 13 Pa.C.S. § 1303(b). A course of dealing between two parties "is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement." SDCL 57A–1–303(d); 13 Pa. C.S. § 1303(d).

Authority in the Second Circuit holds that standard terms contained in order confirmations, repeatedly retained without objection, "may, over time, become part of later contracts." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 31 (2d Cir.1997) (citing *Pervel Industries v. T M Wallcovering, Inc.,* 871 F.2d 7 (2d Cir.1989)). The understanding of the parties "may be inferred from ... tacit acceptance of a clause repeatedly sent to the offeree in an order confirmation document." *Id.*

IFS argues that Bell's failure to object to the forum-selection clause during the course of the past eight years of transactions establishes a course of dealing in which Bell acquiesced to the forum-selection clause. Bell counters that only some of its retained invoices from IFS are accompanied by the Terms and Conditions in which the forum-selection clause was included, and that the Terms and Conditions thus did not necessarily govern every order, specifically the orders forming the basis of its cause of action against IFS.

■ Based on the undisputed material facts, the Terms and Conditions containing the forum selection clause have been part of the parties' course of dealing for eight years and appear to have been incorporated by reference into every invoice. *See Nordyne, Inc. v. Int'l Controls & Measurements Corp.,* 262 F.3d 843, 847 (8th Cir.2001) (affirming district court determination that forum-selection clause had sufficient terms to constitute offer and had

been part of parties' course of dealing and incorporated by reference into applicable contract). Bell has not factually disputed whether the Terms and Conditions were included along with each invoice. Rather, the Parsons affidavit simply states that none of the "retained" invoices with respect to the M781 adhesive supplied in late–2008 included the Terms and Conditions. Similarly, Bell's Response to Defendant's Motion to Transfer states that "Bell has no record of IFS including the Terms and Conditions document with the invoices for the sales transactions at issue in this case." (Doc. 16, at 3–4). Bell never objected to these Terms and Conditions until IFS's present motion.

Bell's statements that it did not *retain* or that it *does not have a record of* the invoices, along with the Terms and Conditions containing the forum-selection clause, *do not genuinely dispute whether Bell actually received and accepted* the Terms and Conditions. On the other hand, the Defrees and Davis affidavits establish that IFS's regular business practices entailed submitting the Terms and Conditions with *every* invoice sent to Bell since December 2006. The undisputed facts demonstrate that the Terms and Conditions formed part of the common basis of understanding between Bell and IFS. Therefore, the Court concludes that Bell received the Terms and Conditions with the invoices and at least tacitly accepted the Terms and Conditions through its course of dealing with IFS. Thus, the Terms and Conditions constitute a properly formed contract governing the sales transactions at issue between the parties.

As in *K.K.D. Imports,* "[t]he circumstances relied upon by the Second Circuit in *New Moon Shipping* to hold that an evidentiary hearing was required in that case—the fact that the parties there engaged in three different types of transactions involving three different order and confirmation practices, the arguably deceptive character of the language relied upon in that case, and 17 disputes concerning whether the party against whom the forum selection was sought to be enforced actually received key documents—all are absent here." 36 F.Supp.2d at 203 (citing *New Moon Shipping,* 121 F.3d at 32). Here, although Bell purchased different types of hot melt adhesive from IFS on occasion, the parties have engaged in essentially the same type of transaction involving the same order and confirmation practices since 2002; no allegations of deception exist; and Bell has not disputed whether it actually received the Terms and Conditions. Therefore, an evidentiary hearing regarding the present motion is unnecessary in light of the facts set forth in the affidavits.

## B. Enforceability of Forum–Selection Clause

Bell's argument that the forum-selection clause is unenforceable on account of being unreasonable and unjust must fail. "[F]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid." *Servewell Plumbing, LLC v. Fed. Ins. Co.,* 439 F.3d 786, 789 (8th Cir.2006). "Mere inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause," unless proceeding in "the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 790 (citation omitted). While litigation in Pennsylvania or elsewhere would be less convenient for Bell than litigation in South Dakota, Bell has not made the showing necessary to defeat enforcement of the clause on this ground. In fact, this Court recently considered the convenience of the parties in transferring a Bell action to Illinois based on a contractual forum selection clause, stating "all of the

South Dakota witnesses are party-witnesses and the ability of Plaintiff to secure their presence in the transferee forum is greater than if the witnesses were not employees of the party." *Bell Inc. v. Drent Goebel USA, Inc.*, 2009 WL 2634036 (D.S.D. Aug. 24, 2009). Neither the convenience of the parties nor the interests of justice compel the Court to decline enforcement of the forum-selection clause. The forum-selection clause is valid and governs all the transactions at issue.

## IV. CONCLUSION

Because a valid and enforceable forum-selection clause established Pennsylvania as the exclusive forum for disputes arising under the contracts underlying Bell's claims, it is hereby

ORDERED that Defendant IFS's Motion to Change Venue (Doc. 13) under 28 U.S.C. § 1404(a) to the United States District Court for the Eastern District of Pennsylvania is granted. It is further

ORDERED that the above-entitled action shall be transferred to the United States District Court for the Eastern District of Pennsylvania.